# Exhibit A

To: Defendants, Allianz Global Risks US Insurance Company, Federal Insurance Company, Lexington Insurance Company and XL Insurance America, Inc.'s Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Complaint Under FRCP 12(b)(6).

This is certified to be a true and correct copy of the original policy and or endorsements issued to:

Named Insured: _Wayne County Airport Authority_

Policy Number: _CLP 3011353_

Policy Year: _4/12/2010 - 4/12/2011_

Allianz Global Risks US Insurance Company

By: _____
Authorized Agent

Date: _9/19/11_



## Allianz Global Risks

**Allianz Global Risks US Insurance Company**
2350 Empire Avenue, Burbank, CA 91504

## COMMERCIAL LINES POLICY

This is Certified to be a
true and correct copy of
the policy on file with
this company

_Signed_ _____ _Date_ 9/19/11

THIS POLICY CONSISTS OF:
- DECLARATIONS
- ONE OR MORE COVERAGE PARTS.

A COVERAGE PART CONSISTS OF:
- ONE OR MORE COVERAGE FORMS
- APPLICABLE FORMS AND ENDORSEMENTS

AGR-DS 1000 (05-09)                                                    Page 1 of 2

**In Witness Whereof,** we have caused this policy to be executed and attested, and if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Secretary                                      President and Chief Executive Officer

# Allianz Global Risks US Insurance Company

(A Stock Company)
2350 Empire Avenue
Burbank, CA 91504-3350

## COMMON POLICY DECLARATIONS

Policy No.:   **CLP3011353**

Policy Period:   From:   **April 12, 2010**
To:   **April 12, 2011**

First Named Insured:
**Wayne County Airport Authority**
Wayne County Airport Authority,
Detroit Metropolitan Wayne County Airport,
L.C. Smith Terminal - Mezzanine
Detroit, MI 48242
USA

Producer:
**Marsh USA Inc**
600 Renaissance Center #2100

Detroit, MI 48243
USA

| | |
|---|---:|
| Property Policy Premium | $139,921.00 |
| Certified Terrorism | $20,116.00 |
| **TOTAL AMOUNT PAYABLE BY THE INSURED** | **$160,037.00** |

AGR-DS 1001 (11-07)

Page 1 of 1

# Allianz Global Risks US Insurance Company

## FORMS AND ENDORSEMENT LIST

NAMED INSURED:    Wayne County Airport Authority
POLICY NUMBER:    CLP  3011353
EFFECTIVE DATE:    4/12/2010

The following policy forms and endorsements have been attached to and made a part of the policy at inception.

| FORM NAME | FORM NUMBER | EDITION DATE |
|---|---|---|
| Policyholder Notice - All States | AGR-IL 8001 (07-05) | 07/2005 |
| Policyholder Notice - OFAC | AGR-IL 8003 (01-05) | 01/2005 |
| XL Insurance Commercial Property Coverage Form | No Form No. Assigned | 04/2010 |
| Standard Fire Policy Provisions Endorsement | AGR-CP 4005 (11-07) | 11/2007 |
| Electronic Data Limitation Endorsement | AGR-CP 5104 (02-05) | 02/2005 |
| Fungi Exclusion Endorsement | AGR-CP 5101 (02-05) | 02/2005 |
| Terrorism Endorsement: Certified Act Of Terrorism | AGR-CP 5T11 (02-08) | 02/2008 |
| General Change Endorsement | AGR-IL M001 (11-03) | 11/2003 |

AGR-DS 1002 (11-03)



# POLICYHOLDER NOTICE - ALL STATES

Allianz Global Risks US Insurance Company
24 Hour Emergency Claims Service

## TO OBTAIN INFORMATION, FILE A CLAIM OR TO MAKE A COMPLAINT:

You may call Allianz Global Risks US Insurance Company's toll free number at:

**Phone:** **(800) 211-6647**
**Fax:** **(818) 260-7239**

**Emergency Pager Number:** (800) 418-2811
**Online Claims Reporting:** www.allianzglobalrisks.com/us/claims

You may also write to:

Allianz Global Risks US Insurance Company
P.O. Box 7780
2350 Empire Avenue
Burbank, California 91510-7780

For additional copies of this notice or convenient business cards/contact cards, call:

**Phone:** (818) 260-7152
e-mail: cfrey@aic-allianz.com

## ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

AGR-IL 8001 (07-05)                                                    Page 1 of 1



**Allianz** Global Risks

# POLICYHOLDER NOTICE - OFAC

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- o   Foreign agents;
- o   Front organizations;
- o   Terrorists;
- o   Terrorist organizations; and
- o   Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

AGR-IL 8003 (01-05)

Page 1 of 1

# Commercial Property Insurance Declarations

Each capitalized word or term is defined in the Definitions Section of the policy wording to which these Declarations are attached.

| | |
|---|---|
| **Company:** | Allianz Global Corporate and Specialty<br>225 West Washington St.<br>Chicago, Il. 60616 |

**Policy No.:**   CLP 3011353                                  **Issue Date:**   June 23, 2010

**A.**   **Insured/Mailing Address:**

**Wayne County Airport Authority**

Detroit Metropolitan Wayne County Airport
L.C. Smith Terminal - Mezzanine
Detroit, MI  48242

and any subsidiary, associated or affiliated companies, corporations, firms or organizations in which the Insured has management control or ownership, as now or may hereafter be constituted during the Policy Term, and any interest in a partnership or joint venture in which the aforementioned entities have more than fifty percent (50%) ownership interest or management control; provided always that the entity's interest in any property insured hereunder was presented to the Company for consideration prior to the Policy Term, or, if acquired during the Policy Term, at the time it first becomes insured hereunder.

**B.**   **Policy Term**

**Inception Date:**   April 12, 2010 at 12:01 a.m. Standard Time at the location of the property involved in any claim

**Expiration Date:**   April 12, 2011 at 12:01 a.m. Standard Time at the location of the property involved in any claim

**C.**   **Territory**

As defined in the policy wording to which these Declarations are attached, together with any additional geographic limitations stated in these Declarations.

**D.**   **Currency**

Unless otherwise stated, the currency of any amount described anywhere in this contract is in United States Dollars.

**E.      Premium**

The annual premium of $160,037 is payable at policy inception and is inclusive of any premium shown on endorsements issued at inception. Subsequent additions to Property Insured and the corresponding insured values are subject to additional premium as provided in this policy. This premium:

1.      excludes surcharges or fees (if any) as listed in **Paragraph J.** below;

2.      excludes premium shown on any endorsements attached to this policy after inception;

3.      excludes brokerage commission;

---

**F.      Policy Limit**

1.      **Company as Participating Insurer**

In the event the Company participates with other insurers in one or more layers excess of the deductible, the maximum amount the Company shall pay per Occurrence is limited to the Company's share of each successive layer shown in the chart below. This amount is further limited by any applicable sublimit(s) stated in **Paragraph G.** below, or in any applicable endorsement made part of this contract.

| Layer Excess of Deductibles | Layer Limit per Occurrence | | Company Share | Company Capacity |
|---|---|---|---|---|
| | | | | |
| Primary | $750,000,000 | xs of | deductibles | 0% | No Participation |
| 1st Excess | $250,000,000 | xs of | $750,000,000 | 0% | No Participation |
| | | | | | $0 |

2.      **Application**

Except where an aggregate limit is stated in **Paragraph G.** below, or in any endorsement made part of this contract, the Company's payment for one Occurrence shall not reduce the applicable limit or sublimit available for another separate Occurrence.

Except as expressly stated in **Paragraph G.** below, or in any endorsement made part of this contract, any applicable sublimit(s) apply beginning with the lowest layer excess of the deductible and from the ground up apply successively through the layer(s) up to the sublimited amount. All sublimits as stated in **Paragraph G.** below, or in any endorsement made a part of this contract, represent the 100% amounts which shall be restricted by application of the **Company as Participating Insurer** provision described above. Any part of a sublimit so retained by the Insured or so attributed to a layer of insurance fully exhausts that part of the sublimit for all purposes concerning the Occurrence.

---

**G.      Sublimits**

In the event of an Occurrence insured under this policy, the following sublimits apply to any claim made by the Insured.

All sublimits fall within the applicable Occurrence limit stated in **Paragraph F.** above and do not increase it. If more than one sublimit applies to an Occurrence, those sublimits are payable cumulatively up to the applicable Occurrence limit; except, sublimits stated below for perils (if any; and including by way of illustration and not limitation Earth Movement, Flood or Named Storm) are the maximum amount the Company shall pay under any circumstances for all Damage and Time Element loss caused by or resulting from each such peril, per Occurrence subject to any applicable annual aggregates.

If one such peril ('initial peril') involves Damage or Time Element subject to any sublimited coverage or by any other sublimited peril (including by way of illustration and not limitation, Flood arising from or related to Named Storm), the maximum amount payable for that resulting coverage or peril is its respective sublimit which, when paid, also applies in that amount to reduce the remaining sublimit for the 'initial peril'. By entering into this insurance, the Insured and the Company agree that all such Damage and Time Element was proximately caused by the 'initial peril' and is subject to that sublimit.

All sublimits are per Occurrence unless otherwise stated. When a sublimit is stated as applying in the 'annual aggregate', the maximum the Company shall pay under this policy under any circumstances for such matter will not exceed the stated aggregate limit during any policy year.

| | |
|---|---|
| $10,000,000 | **Accounts Receivable** |
| $20,000,000 | **Auto Physical Damage / Mobile Equipment** |
| $100,000,000 | **Boiler and Machinery**, except not to exceed the following which are part of and not in addition to this general **Boiler and Machinery** limit: |
| $1,000,000 | **Ammonia Damage** |
| $10,000,000 | **Expediting Expenses** |
| $1,000,000 | **Substance Declared Hazardous** |
| $5,000,000 | **Spoilage** |
| $1,000,000 | **Water Damage** |
| $5,000,000 | **demolition and increased cost of construction** (building laws) |
| $5,000 | **EDP Data Processing Media** |
| $10,000,000 | **Bridges, Tunnels and Walkways** |
| $10,000,000 | **Building 520 – Berry International Terminal** |
| $1,000,000 | **Building 520 – Berry International Jet Bridges** |
| $25,000,000 | **Building 603 – LC Smith Terminal** |
| Included | **business interruption** (Gross Earnings) |
| $15,000,000 | **contingent business interruption / contingent extra expense, direct suppliers or customers**; *this coverage may be further sublimited elsewhere for certain perils* |
| $25,000,000 | **debris removal**, or 25% of the loss, whichever is greater |
| $10,000,000 | **decontamination costs**, per Occurrence and in the annual aggregate |
| $25,000,000 | **demolition and increased cost of construction** (building laws) |
| $25,000,000 | **Earth Movement**, per Occurrence and in the annual aggregate, except not to exceed the following per Occurrence and annual aggregate limits which are a part of and not in addition to this general **Earth Movement** aggregate limit: |
| Excluded | **California** |
| Excluded | **Pacific Northwest Seismic Zone** |
| Excluded | **Alaska, Hawaii and Puerto Rico** |
| Excluded | **New Madrid Seismic Zone** |
| $1,000,000 | **newly acquired Locations** |
| Excluded | **Unnamed / Unreported Locations** |
| $1,000,000 | **errors and omissions** |
| $10,000,000 | **EDP Data Processing Media** |
| $10,000,000 | **errors and omissions**; *this coverage may be further sublimited elsewhere for certain perils* |
| $1,000,000 | **exhibitions, expositions, fairs or trade shows** |
| 180 days | **extended period of indemnity** applicable to all Locations |

| $25,000,000 | **extra expense & expediting expenses combined** |
| $10,000,000 | **Fine Arts** |
| $250,000 | **fire department service charges and extinguishing expenses** |
| $25,000,000 | **Flood**, per Occurrence and in the annual aggregate, except not to exceed the following per Occurrence and annual aggregate limits which are a part of and not in addition to this general **Flood** aggregate limit: |

| $2,500,000 | **High Hazard Flood Zones** |
| $1,000,000 | **newly acquired Locations** |
| Excluded | **Unnamed / Unreported Locations** |
| $1,000,000 | **errors and omissions** |

| $10,000,000 | **ingress/egress** [limited to thirty (30) consecutive days and within ten (10) statute miles] |
| $10,000,000 | **interruption by civil or military authority** [limited to thirty (30) consecutive days and within ten (10) statute miles] |
| $25,000,000 | **Leasehold Interest** (excess rent) |
| $10,000,000 | **newly acquired Locations**, subject to a one hundred twenty (120) day reporting period; *this coverage may be further sublimited elsewhere for certain perils* |
| $10,000,000 | **off-premises service interruption** (combined property damage and time element) subject to a twenty (20) mile distance limitation; *this coverage may be further sublimited elsewhere for certain perils* |
| Excluded | payroll as respects at North Terminal |
| Excluded | payroll expense as respects the McNamara Terminal |
| 90 days | payroll expense as respects the L.C. Smith and Berry Terminals |
| 90 days | payroll expense as respects the Willow Run Airport |
| $1,000,000 | **Personal Effects of Employees and Officers** |
| $250,000 | **Plants, Trees and Shrubs** |
| $1,000,000 | **Pollutant and/or Hazardous Material clean-up and removal** (from uninsured property), per Occurrence and annual aggregate |
| $5,000,000 | **professional fees** |
| $5,000,000 | **Property in the course of construction or erections (Soft Costs)** |
| $10,000,000 | **protection of property** |
| $25,000,000 | **rental value** |
| $1,000,000 | **Taxiways & Aviation Runways** |
| $2,500,000 | **transit** |
| $5,000,000 | **Unnamed / Unreported Locations**; *this coverage may be further sublimited elsewhere for certain perils* |
| $10,000,000 | **Valuable Papers and Records** |

---

**H.**  **Deductible Clause and Deductible Application**

1. For each Occurrence giving rise to a claim under this policy, the Insured agrees to retain for its own account a deductible calculated on the following basis:

| $250,000 | combined all coverages including the Edward H. McNamara Terminal, except as indicated below: |
| $100,000 | North Terminal |
| $50,000 | Rest of Facilities including Willow Run, L.C. Smith Terminal and Berry Terminal |

| $10,000 | Vehicles & Mobile Equipment |
|---|---|
| $100,000 | **Earth Movement**, except $250,000 for the Edward H. McNamara Terminal |
| $100,000 | **Flood**, except $250,000 for the Edward H. McNamara Terminal |
| $10,000 | **Transit** |
| $50,000 | **Boiler and Machinery**, Property Damage |
| 1 x ADV, minimum $50,000 | **Boiler and Machinery**, Time Element |
| $250,000 | Equipment Breakdown at McNamara or involving ICE/Generator Units 7000 hp or larger |
| 10% of loss, $10,000 minimum | **Boiler and Machinery**, Spoilage |

2. Unless otherwise stated, if two or more deductible amounts apply to an Occurrence, the total to be deducted shall be determined as follows:

(a) For combined deductibles (those applying to both coverage under the **Physical Property Section** and Time Element), if two or more combined deductibles apply, the total deductible amount will be the largest combined deductible.

(b) For separate deductibles (those applying separately to: (i) coverage under the **Physical Property Section**, and (ii) Time Element), if two or more separate deductibles apply, the deductible amounts to be applied will be the largest deductible amount applying to (i) and the largest deductible amount applying to (ii).

(c) If both combined and separate deductibles apply, the total deductible amount shall be the larger of the deductible amount determined in (a) or the sum of the deductible amounts to be applied as provided for in (b).

(d) For deductibles specifically indicated as applying on a "per Location" basis, the deductible amount applying to each Location will be the largest of (a), (b), or (c) above, applied separately to each such Location.

3. A deductible and any succeeding limit or sublimit that is based on a number of hours or days is the stated hours or days that immediately follow the commencement of any Damage, or if the Insured claims Time Element loss from the damage of property of others that is insured under the **Contingent Time Element Section**, then immediately following the commencement of that damage.

---

I.   **Waiting Period**

The Company is not liable for any loss or damage unless the period of interruption exceeds the specified Waiting Period, and then such potential liability will be adjusted per the terms and conditions of the Policy subject to the applicable deductible.

| 1. | 24 hours | **off-premises service interruption** |
|---|---|---|
| 2. | 24 hours | **ingress/egress** |
| 3. | 24 hours | **interruption by civil or military authority** |
| 4. | 24 hours | **Boiler and Machinery – time element service interruption** |

J.      **Surcharges and Fees (in addition to premium applicable at inception)**

    1.      None

K.      **Endorsement(s) made a part of this policy at time of issuance:**

    1.      Endorsement No. 1          Certified Act(s) of Terrorism Endorsement
    2.      Endorsement No. 2          Participation Endorsement
    3.      Endorsement No. 3          Joint Loss Agreement
    4.      Endorsement No. 4          Additional Named Insured Endorsement
    5.      Endorsement No. 5          Mid Term Premium Adjustment Clause Endorsement

In return for the payment of the premium and subject to all other provisions of this contract, the Company agrees to provide insurance as specified herein to the Insured named in these Declarations.

_____
Authorized Representative

# Table of Contents

COMMERCIAL PROPERTY INSURANCE DECLARATIONS ......................................................... 1

TABLE OF CONTENTS ............................................................................................................. 7

COMMERCIAL PROPERTY INSURANCE POLICY ..................................................................... 11

INSURING AGREEMENT .......................................................................................................... 11

PHYSICAL PROPERTY SECTION ............................................................................................ 11

I.      PROPERTY INTERESTS INSURED ......................................................................... 11

      A. Insured's Property ........................................................................................... 11
      B. Property of Others ........................................................................................... 11
      C. Officers and Employees .................................................................................. 11
      D. Contractor's Interest ........................................................................................ 11
      E. Transit ............................................................................................................. 12
      F. Exhibitions ....................................................................................................... 12
      G. Newly Acquired Locations ............................................................................... 12
      H. Unnamed/Unreported Locations ...................................................................... 13
      I. Off-Premises Service Interruption ..................................................................... 13

II.     PROPERTY NOT INSURED ..................................................................................... 13

III.    PHYSICAL DAMAGE EXPENSES ............................................................................ 15

      A. Debris Removal ................................................................................................ 15
      B. Decontamination Costs .................................................................................... 15
      C. Demolition and Increased Cost of Construction (Building Law) ........................ 15
      D. Expediting Expenses ....................................................................................... 15
      E. Fire Department Service Charges and Extinguishing Expenses ....................... 16
      F. Pollutant(s) and/or Hazardous Material Cleanup and Removal (From Uninsured Property).............. 16
      G. Professional Fees ............................................................................................ 16
      H. Protection of Property ...................................................................................... 16

IV.    PHYSICAL PROPERTY VALUATION ....................................................................... 16

      A. Buildings, Structures, Furniture, Fixtures, Machinery and Equipment ............. 17
      B. Raw Stock, Merchandise and Supplies ........................................................... 17
      C. Stock in Process .............................................................................................. 17
      D. Finished Stock ................................................................................................. 17
      E. Media ............................................................................................................... 17
      F. Improvements and Betterments ....................................................................... 17
      G. Control of Damaged Goods .............................................................................. 18
      H. Pair, Set or Parts ............................................................................................ 18
      I. Fine Arts ........................................................................................................... 18
      J. Valuable Papers and Records .......................................................................... 18
      K. Accounts Receivable ....................................................................................... 18
      L. Property in Transit ........................................................................................... 19
      M. Catalysts, Refractory Materials, and Crucibles ............................................... 19
      N. Other Insured Property .................................................................................... 19

TIME ELEMENT SECTION ....................................................................................................... 20

I.      DIRECT TIME ELEMENT INSURANCE ................................................................... 20

      A. Business Interruption ....................................................................................... 20
      B. Extra Expense ................................................................................................. 21

C. Leasehold Interest (Excess Rent) .......................................................................... 22
D. Rental Value ......................................................................................................... 22
E. Research and Development ................................................................................... 22

II.   CONTINGENT TIME ELEMENT INSURANCE ........................................................ 22

A. Contingent Business Interruption ......................................................................... 22
B. Interruption by Civil or Military Authority ............................................................... 23
C. Ingress/Egress ..................................................................................................... 23
D. Off-Premises Service Interruption ......................................................................... 23
E. Royalties ............................................................................................................... 23

III.   ADDITIONAL TIME ELEMENT PROVISIONS AND EXTENSIONS ......................... 23

A. Period of Indemnity ............................................................................................... 23
B. Extended Period of Indemnity ............................................................................... 24
C. Experience of the Business ................................................................................... 24
D. Expenses Proven to Reduce Loss ........................................................................ 24
E. Time Element Values ............................................................................................. 24
F. Resumption of Operations ..................................................................................... 25
G. Soft Costs and Delay in Start Up .......................................................................... 25

IV.   TIME ELEMENT EXCLUSIONS ............................................................................... 25

A. Finished Stock ...................................................................................................... 25
B. Idle Periods ........................................................................................................... 25
C. Leases, Licenses, Contracts, Orders ................................................................... 26
D. Newly Acquired and Unnamed/Unreported Locations .......................................... 26
E. Transit ................................................................................................................... 26

EXCLUSIONS APPLICABLE TO ALL SECTIONS .............................................................. 27

I.   TYPES OF DAMAGE ................................................................................................ 27

II.   CAUSES OF LOSS – INSURED CONTROL ............................................................ 27

III.   OTHER IDENTIFIED CAUSES OF LOSS ................................................................ 28

A. Asbestos Exclusion ............................................................................................... 28
B. Biological and Chemical Exclusion ........................................................................ 28
C. Computer Acts Exclusion ...................................................................................... 28
D. Construction Design/Build Exclusion .................................................................... 29
E. Electronic Date Processing Exclusion ................................................................... 29
F. Law and Interference Exclusion ............................................................................. 29
G. Molten Materials Exclusion ................................................................................... 29
H. Nuclear and Radioactivity Exclusion ..................................................................... 30
I. Pollutant(s) and/or Hazardous Material Exclusion ................................................. 30
J. Terrorism Exclusion [HFP 144 (01-08)] ................................................................. 30
K. War Risk Exclusion ............................................................................................... 31

TERMS AND CONDITIONS APPLICABLE TO ALL SECTIONS ......................................... 32

I.   UNDERTAKINGS ...................................................................................................... 32

A. Abandonment ........................................................................................................ 32
B. Assignment ........................................................................................................... 32
C. Cancellation .......................................................................................................... 32
D. Certificates of Insurance ....................................................................................... 32
E. Concealment, Misrepresentation, Omission or Fraud ........................................... 32
F. Maintenance of Underlying Policies ....................................................................... 33
G. Errors and Omissions ........................................................................................... 33
H. Excess Insurance .................................................................................................. 33
I. Identity of interests ................................................................................................. 33
J. Inspection of Property and Operations ................................................................... 34

    K.  No Control ............................................................................................ 34
    L.  Other Insurance .................................................................................. 34
    M. Pro Rata Liability ............................................................................... 34
    N.  Report of Values Requirement ......................................................... 34
    O.  Suspension of Insurance .................................................................. 34
    P.  Titles of Paragraphs .......................................................................... 35
    Q. Underlying Insurance ........................................................................ 35

II.       **CALCULATIONS** ........................................................................................ **35**

    A.  Currency ............................................................................................ 35
    B.  Tax Treatment of Certain Profits ...................................................... 35

III.     **CLAIMS PROCESS** ................................................................................... **35**

    A.  Appraisal ........................................................................................... 35
    B.  Claims Adjustment Assignment ....................................................... 36
    C.  Insured's Duties in the Event of Damage ........................................ 36
    D.  Interim Payments .............................................................................. 36
    E.  Mortgagee Interests and Obligations ............................................... 37
    F.  Subrogation ....................................................................................... 37
    G.  Submissions to the Company for Claims .......................................... 37
    H.  Suit and Choice of Law .................................................................... 37
    I.   When and To Whom Loss Payable .................................................. 38

**DEFINITIONS SECTION** ...................................................................................... **39**

I.        **GENERAL APPLICATION** ......................................................................... **39**

    A.  Actual Cash Value ............................................................................ 39
    B.  Company ............................................................................................ 39
    C.  Computer Virus ................................................................................. 39
    D.  Damage ............................................................................................. 39
    E.  Date Processing ................................................................................ 39
    F.  Declarations ...................................................................................... 39
    G.  Electronic Data .................................................................................. 39
    H.  Insured .............................................................................................. 39
    I.   Insured Cause of Loss ...................................................................... 40
    J.   Insured's Liability .............................................................................. 40
    K.  Insured Premises .............................................................................. 40
    L.  Insured Property ............................................................................... 40
    M. Location(s) ........................................................................................ 40
    N.  Occurrence ....................................................................................... 40
    O.  Policy Term ....................................................................................... 41
    P.  Pollutant(s) and/or Hazardous Material ........................................... 41
    Q. Replacement Cost ............................................................................ 41
    R.  Territory ............................................................................................ 41
    S.  Time Element .................................................................................... 41
    T.  Unnamed/Unreported Locations ...................................................... 42

II.       **PHYSICAL PROPERTY AND TIME ELEMENT TERMS** ......................... **42**

    A.  Accounts Receivable ........................................................................ 42
    B.  Fine Arts ............................................................................................ 42
    C.  Finished Stock ................................................................................... 42
    D.  Improvements and Betterments ....................................................... 42
    E.  Media ................................................................................................. 42
    F.  Merchandise ...................................................................................... 42
    G.  Month ................................................................................................. 42
    H.  Refractory Material ........................................................................... 43
    I.   Stock in Process ............................................................................... 43
    J.   Transmission and Distribution Lines ................................................. 43
    K.  Valuable Papers and Records .......................................................... 43

III.	ADDITIONAL TIME ELEMENT TERMS ........................................................ 43
	A. Actual Plant Value ........................................................ 43
	B. Contingent Damage ........................................................ 43
	C. Dependent Properties ........................................................ 43
	D. Fixed Charges ........................................................ 44
	E. Gross Earnings ........................................................ 44
	F. Gross Profit ........................................................ 44
	G. Indemnity Period ........................................................ 44
	H. Leasehold Interest ........................................................ 44
	I. Net Leasehold Interest ........................................................ 45
	J. Net Profit ........................................................ 45
	K. Normal ........................................................ 45
	L. Rate of Gross Profit ........................................................ 45
	M. Raw Stock ........................................................ 45
	N. Sales ........................................................ 45
	O. Standard Sales ........................................................ 45

IV.	CERTAIN PERIL DEFINITIONS ........................................................ 45
	A. Boiler and Machinery ........................................................ 45
	B. Earth Movement ........................................................ 46
	C. Flood ........................................................ 47
	D. Named Storm ........................................................ 47
	E. Sinkhole ........................................................ 47
	F. Specified Perils ........................................................ 47
	G. Terrorism ........................................................ 47
	H. Windstorm ........................................................ 48

V.	CERTAIN ZONE DEFINITIONS ........................................................ 48
	A. High Hazard Earth Movement Zones ........................................................ 48
	B. New Madrid Seismic Zone ........................................................ 48
	C. Pacific Northwest Seismic Zone ........................................................ 49
	D. High Hazard Flood Zones ........................................................ 49
	E. High Hazard Wind Zones ........................................................ 49
	F. Moderate Hazard Wind Zones ........................................................ 50

ENDORSEMENT NO. 1 ........................................................ 51

ENDORSEMENT NO. 2 ........................................................ 52

ENDORSEMENT NO. 3 ........................................................ 53

ENDORSEMENT NO. 4 ........................................................ 54

ENDORSEMENT NO. 5 ........................................................ 55

# Commercial Property Insurance Policy

## Insuring Agreement

### Scope

This commercial insurance is for direct physical loss of, or direct physical damage to, first-party property and directly resulting effect on income and expense as more specifically provided for in the sections below. All requirements of this **Insuring Agreement**, as well as those in the ensuing sections, must be satisfied by the Insured before any coverage exists under this policy.

### Definitions

The first letter of each defined word or phrase in this policy is capitalized. For ease of reference, all definitions are collected in the last section of this policy. Except in the **Definitions Section**, the capitalization of paragraph titles does not denote defined words or phrases.

### The Company's Undertaking

Upon satisfaction of all requirements, and subject to all deductibles and limits, the Company will pay the Insured for Damage during the Policy Term to Insured Property at Insured Premises directly and proximately caused by an Insured Cause of Loss.

## Physical Property Section

I.    **Property Interests Insured**

Subject to all other provisions, this policy insures:

A.    **Insured's Property**

Damage to real property in which the Insured has an insurable interest, and personal property owned by the Insured.

By way of illustration and not limitation, this property includes the Insured's use interest in Improvements and Betterments to buildings and structures, Accounts Receivable, and Valuable Papers as those terms are valued in **Physical Property Valuation** paragraphs below.

B.    **Property of Others**

The Insured's interest in real and personal property of others that sustains Damage of a type insured against while that property is in the care, custody or control of the Insured. This includes the Insured's Liability to the owner of such property for the amount of the Damage to that property. The Company's payment for Damage to personal property of others will only be for the account of the owner of that property.

C.    **Officers and Employees**

Damage to personal property of officers and employees of the Insured while on the Insured Premises.

D.    **Contractor's Interest**

The Insured's Liability for Damage to contractor's interest in buildings and structures covered by this policy while under construction, alteration, or repair, or when completed.

E.     Transit

1.     Damage to personal property included within Insured Property, while in transit within the Territory, including the navigable inland fresh waterways therein, by any means of conveyance from the time the property is moved for the purpose of loading and continuously thereafter while awaiting and during loading and unloading and in temporary storage, including temporary storage on any conveyance intended for use for any outbound shipment or used for inbound shipment, including during deviation and delay, until safely delivered and accepted at place of final destination.

2.     This transit insurance includes personal property:

(a)    Shipped by or to the Insured at the Insured's risk, while such property is in the due course of transit within the political subdivisions of a country within the Territory; and

(b)    Sold and shipped by the Insured under terms of F.O.B. point of origin or other terms usually regarded as terminating the shipper's responsibility short of points of delivery.

3.     The Insured may waive right(s) of recovery against private, contract and common carriers and accept bills of lading or receipts from carriers, bailees, warehousemen, or processors limiting or releasing their liability, but this transit insurance shall not inure to the benefit of any carrier, bailee, warehouseman or processor.

With respect to shipments described under **Subparagraphs 2(a) and 2(b)**, this Company agrees to waive its rights of subrogation against shippers and consignees at the option of the Insured.

4.     This insurance shall not be prejudiced by any agreements exempting lightermen from liability.

5.     Seaworthiness of any vessel or watercraft and airworthiness of any aircraft used in transit hereunder are admitted between this Company and the Insured.

F.    **Exhibitions**

Personal property of the Insured situated on the premises of any exhibition, exposition, fair or trade show unless such property is more specifically insured under another policy.

G.    **Newly Acquired Locations**

Any Location rented or purchased after the inception date of this policy is automatically insured against Damage as a newly acquired Location, for the first one-hundred twenty (120) days after the date of acquisition. During that period, the Insured shall submit to the Company full Replacement Cost and **Time Element Values** for the Location. If the Company does not receive and accept that report within one-hundred twenty (120) days after the date of acquisition, the Location shall be insured as an Unnamed/Unreported Location for the remainder of the Policy Term.

Property newly constructed by the Insured during the Policy Term does not qualify under this paragraph unless built at a Location insured at policy inception.

Upon notification to and acceptance by the Company of any newly acquired Location, the same policy limits will apply as though the Location had been acquired and disclosed prior to policy inception. The Insured's report shall consist of a written submission to the Company stating the Location, occupancy, values and other insurance in force for that Location. The Company shall be permitted but not obligated to inspect the newly acquired Location. The Company shall be entitled to an additional premium payable from the date of acquisition.

H.    **Unnamed/Unreported Locations**

Insured Property at an Unnamed/Unreported Location within the Territory. Any Location added to this category under the **Newly Acquired Locations** provision above shall be reported in the next supplemental submission.

I.    **Off-Premises Service Interruption**

In the event a cause of loss of the type insured hereunder directly causes damage to off-premises utility and power stations, substations, transformers, switching or pumping stations, or Transmission and Distribution Lines, then this policy insures Damage to Insured Property at Insured Premises directly resulting from the interruption of incoming electricity, steam, water, natural gas or refrigeration, or from the interruption of outgoing sewerage.

As respects Transmission and Distribution Lines, this insurance is limited to such lines within one thousand (1,000) feet of the property line of the Insured Premises.

The applicable deductible stated in the Declarations shall apply after the waiting period stated in the Declarations has been fully applied as measured from the time of resulting Damage to Insured Property to the time when, with due diligence, the interrupted service would be restored.

II.   **Property Not Insured**

This policy does not insure the following types of property or any Damage to them:

A.    Contractors' and subcontractors' machinery, tools and equipment used in the erection of Insured Property unless the total capital value of such property is directly and specifically charged to the job;

B.    Money, bills, currency, notes, bonds or securities;

C.    Land, growing, standing or drying crops, outdoor plants, shrubs, lawns, trees, timber, mineral rights, mineral reserves, or any property or part thereof that is located below the surface grade of the contiguous land unless expressly presented to and accepted by the Company before becoming insured hereunder;

D.    Water of any kind, except the quantity of water at the time of Damage that is contained within any insured tank, piping system or equipment being used in the ordinary course of the Insured's business;

E.    Underground mines, shafts, caverns or any property contained therein;

F.    Docks, piers, wharves and property located thereon;

G.    Aircraft, railroad rolling stock, spacecraft or watercraft and contents thereof (except contents, as expressly provided by the **Transit** provision and not otherwise excluded herein);

H.    Vehicles licensed for highway use when not on Insured premises;

I.    Dams or dikes;

J.    Platforms, rigs, structures or other property located offshore or in or on salt water;

K.    Wells and pipelines, except pipelines on Insured Premises that are used by the Insured in active business operations during the Policy Term;

L.    Satellites, Transmission and Distribution Lines (except as expressly provided in **Off-Premises Service Interruption** provisions);

M.      Animals, birds or fish;

N.      Furs, jewelry, or precious stones or metals;

O.      Deeds, evidences of debt or title;

P.      Intangible property, including, without limitation, goodwill and intellectual property of any kind;

Q.      Property sold under conditional sales, trust agreement, installment agreement or other deferred payment plan or that has been delivered to a customer or distributor, or that otherwise has left the Insured's possession for sale except as insured hereunder for due course of transit;

R.      Any conveyance used as the mode of transportation for property in transit;

S.      Property located at facilities where operations have ceased or which are vacant or unoccupied, unless fire protection, watch and alarm services are maintained, and written notification is given to and accepted by the Company prior to the sixtieth (60th) consecutive day of cessation of operations, vacancy or unoccupancy. The premises are considered vacant or unoccupied when they do not contain enough Insured Property to conduct customary business operations. Buildings under construction or renovation are not considered vacant;

T.      Property in transit:

      1.      Insured under any marine import or export ocean cargo insurance from the following time periods:

            Any export shipment once the earlier of the following occurs:

            (a)     The shipment is placed on the export conveyance; or

            (b)     Coverage under an ocean marine or other insurance policy covering the shipment begins;

            Any import shipment until the later of the following occurs:

            (a)     The shipment is unloaded from the importing vessel or conveyance; or

            (b)     Coverage under an ocean marine or other insurance policy covering the shipment ends;

      2.      Shipped by mail from the time it passes into the custody of the United States Postal Service, or any other governmental postal service;

      3.      Waterborne or while conveyed on or over salt water, but not limiting coverage for conveyance for that part of transit while on the navigable inland waterways of any country within the Territory;

      4.      Airborne shipments unless by regularly scheduled passenger airlines or air freight carriers;

      5.      Personal property of others if such property is being transported by the Insured in or on vehicles owned, operated, leased or otherwise contracted by the Insured when the Insured is acting as a common or contract carrier; or

      6.      Goods for sale while in the care, custody or control of the Insured's salespersons or sales representative.

III.   **Physical Damage Expenses**

In the event of Damage to Insured Property by an Insured Cause of Loss, the Company will pay, within the relevant limitations, the following expenses:

A.   **Debris Removal**

The necessary and reasonable expenses actually incurred by the Insured to remove from Insured Premises debris of Insured Property remaining after any Damage by an Insured Cause of Loss. The Company will pay these expenses only if the existence and amount of debris removal is reported to the Company within one hundred eighty (180) days of the Damage. Debris removal does not include any expense for removal of Pollutant(s) and/or Hazardous Material under any circumstance.

B.   **Decontamination Costs**

The increase in the necessary and reasonable expenses beyond the cost to repair or replace Insured Property in order to satisfy any law or ordinance in force at the time of Damage that requires decontamination or removal of Pollutant(s) and/or Hazardous Material from Insured Property. The expenses insured hereunder do not include costs required for removing uninsured property or any Pollutant(s) and/or Hazardous Material therein or thereon, whether or not arising from or relating to an Insured Cause of Loss.

C.   **Demolition and Increased Cost of Construction (Building Law)**

The additional reasonable and necessary amounts required by the enforcement of any law or ordinance in force at the time of Damage regulating the construction, repair, replacement, use or demolition of building(s) or structure(s), but limited to:

1.   The cost of demolishing and value of any undamaged portion(s) of the building(s) or structure(s) to comply with such law or ordinance, with the value of those undamaged portion(s) determined on the same basis as the damaged portions less any allowance for enforcement hereunder;

2.   The added cost, if any, in rebuilding or replacing both the damaged and demolished portions on the same Insured Premises, with like height, floor area and style and for like occupancy to comply with the minimum requirements of such law or ordinance;

3.   The increase in Time Element arising out of additional time required to comply with such law and ordinance.

Amounts insured hereunder do not include those for machinery, equipment, or any property other than building(s) or structure(s). This section does not apply to any amount (i) associated with the enforcement of any law or ordinance concerning Pollutants and/or Hazardous Material; (ii) which requires the Insured or others to test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to, assess, or modify the effects of Pollutants and/or Hazardous Material; or (iii) which relates to work place safety or other environmental regulations of any kind.

D.   **Expediting Expenses**

The necessary and reasonable expenses for temporary repairs or, if less, for expediting the permanent repairs of Insured Property. Expediting expenses include overtime wages and the cost of express or other rapid means of transportation. Expediting expenses do not include any expenses for temporary rentals, permanent replacement, or any interest insured elsewhere in this policy.

E.   **Fire Department Service Charges and Extinguishing Expenses**

The regular agreed fire department service (or brigade) charges at the Insured Premises where Damage takes place, and the necessary related extinguishing expenses (or those imposed by law for extinguishing) that are incurred because of fire or explosion on or exposing that Location.

F.   **Pollutant(s) and/or Hazardous Material Cleanup and Removal (From Uninsured Property)**

The necessary and reasonable expenses actually incurred by the Insured to clean up Pollutant(s) and/or Hazardous Material from land or water on Insured Premises, but only where the following requirements are met: (i) one of the Specified Perils occurs during the Policy Term causing Damage to Insured Property; (ii) that Damage directly results in the discharge, dispersal, seepage, migration, release or escape of Pollutant(s) and/or Hazardous Material on to the Insured Premises during the Policy Term; and (iii) the Insured reports the expenses to the Company within one hundred eighty (180) days of the date of Damage.

Insured expenses hereunder include the necessary and reasonable amounts incurred by the Insured to test for, monitor or assess the existence, concentration or effects of Pollutant(s) and/or Hazardous Material, following the Damage, but only for those expenses incurred prior to or during the physical cleanup and removal of the Pollutant(s) and/or Hazardous Material from Insured Premises. Insured expenses do not include any costs, fines or penalties excluded by the second paragraph of **Exclusions Applicable to All Sections, Paragraph III.J. (Pollutants and/or Hazardous Material Exclusion)**.

G.   **Professional Fees**

The necessary and reasonable expenses actually incurred by the Insured, of fees payable to the Insured's accountants, architects, auditors, engineers, or other professionals for the sole purpose of producing and certifying any particulars or details contained in the Insured's books or documents, or such other proofs, information or evidence required by the Company resulting from a covered claim.

The amounts insured hereunder do not include fees or costs of: (i) attorneys, public adjusters and loss appraisers, all including any of their subsidiary, related or associated entities either partially or wholly owned by them or retained by them for the purpose of assisting them; (ii) the costs of using the Insured's employees; and (iii) loss consultants who provide consultation on coverage or negotiate claims.

H.   **Protection of Property**

In the event of actual or imminent Damage by an Insured Cause of Loss during the Policy Term, the necessary and reasonable expenses incurred by the Insured in temporarily recovering or safeguarding Insured Property from additional damage. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interest. The Company's portion of such expenses shall be limited to the extent such expenses reduce Damage which would otherwise have been payable under this policy. The expenses are subject to the deductible provisions and insurance limits on the same basis as a covered claim amount for insured Damage.

No liability is assumed for the expense to cleanup and remove Pollutant(s) and/or Hazardous Material from land or water at newly acquired Locations and Unnamed/Unreported Locations.

IV.   **Physical Property Valuation**

Unless another basis of valuation is specified in this section for a type of property, the Insured shall report to the Company the values of property to be insured under this policy at the current cost to replace it in full. If another basis is specified, the Insured shall report to the Company the values of the property on that

basis. In the event of any Damage to Insured Property from an Insured Cause of Loss, the Insured's claim shall be valued (at the time and place of Damage) as follows:

A.    **Buildings, Structures, Furniture, Fixtures, Machinery and Equipment**

If repaired, rebuilt or replaced within two (2) years from the date of Damage, at the same or at another site (within the same country), the amount of the claim shall be calculated at Replacement Cost.

If the damaged property is not fully repaired, rebuilt or replaced within two (2) years from the date of Damage, the amount of the claim shall not exceed the Actual Cash Value of the damaged property.

If Damage involves any Insured Property that is obsolete or no longer useful for its intended purpose, the amount of the claim shall be limited to the Actual Cash Value of the damaged property.

B.    **Raw Stock, Merchandise and Supplies**

The amount of the claim shall be calculated at Replacement Cost.

C.    **Stock in Process**

The amount of the claim shall be calculated at the value of Raw Stock and labor expended, plus the proper allocated proportion of manufacturing overhead charges.

D.    **Finished Stock**

The amount of the claim shall be calculated at the regular cash selling price, less all discounts and charges to which such Finished Stock would have been subject had no Damage occurred.

However, when recovery for Business Interruption under the Gross Profits method is utilized, the amount of claim for finished stock shall be calculated as the cost of Raw Stock and labor expended, plus the proper proportion of manufacturing overhead charges.

E.    **Media**

The amount of the claim shall be calculated at the cost of such Media blank plus the lesser of (i) the cost of reproducing the data thereon from duplicates or from originals of the previous generation; or (ii) the actual costs incurred to reproduce such data, including the costs to gather or assemble information or data for such reproduction.

F.    **Improvements and Betterments**

If repaired, rebuilt or replaced within two (2) years from the date of Damage, at the same or at another site (within the same country), the amount of the claim shall be calculated at Replacement Cost.

If the Insured Property sustaining Damage is not fully repaired, rebuilt or replaced within two (2) years from the date of Damage, the amount of the claim shall not exceed that proportion of the original cost at time of installation of the lost or damaged Improvements and Betterments which the unexpired term of the lease at the time of loss bears to the period(s) from the date(s) such Improvements and Betterments were made to the expiration date of the lease;

If the Insured Property sustaining Damage is repaired, rebuilt or replaced at the expense of others or, where insured, by other insurers, for the use of the Insured, there shall be no liability hereunder.

G.      **Control of Damaged Goods**

In the event of Damage to Insured Property, the Insured has the right to possession and control of all insured goods and/or products that are damaged bearing labels or permanent markings identifying the Insured as the manufacturer thereof. The Company shall be allowed a reasonable opportunity to determine the salvage value thereof. The value of damaged goods and/or products shall be established by the provisions of this policy.

The Insured, exercising reasonable discretion, shall be the judge of whether the damaged goods or products are suitable for marketing, and no goods or products deemed by the Insured to be unfit for marketing shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Company any salvage which could be or which could have been obtained on any sale or other disposition of such goods or products through established insurance salvage practices. The Insured's determination hereunder shall have no effect on the determination of whether the goods and/or products sustained Damage under this policy.

The Insured may, at the Insured's own expense, stamp "salvage" on the goods or products or may remove or obliterate the labels or permanent markings, if such stamp, removal or obliteration will not physically damage or otherwise reduce the value of the goods or products, but the Insured shall re-label the goods or products in compliance with the requirements of law.

H.      **Pair, Set or Parts**

The amount of claim for any article or articles which are a part of a pair or set shall be calculated at a reasonable and fair proportion of the total value of the pair or set, giving consideration to the importance of said article or articles, but in no event shall Damage to a part constitute total loss of the pair or set.

The amount of claim for any part of Insured Property consisting, when complete for use, of several parts shall be calculated at the value of the part which is lost or damaged.

I.      **Fine Arts**

The amount of claim shall be calculated at the cost to repair or replace, or the stated appraisal value, whichever is smaller. If the Fine Arts item cannot be repaired or replaced and an appraisal cannot reasonably be obtained in the circumstances, the valuation shall be market value based on prevailing conditions at the time of Damage.

J.      **Valuable Papers and Records**

The amount of claim shall be calculated at the cost to replace or repair or restore the Valuable Papers and Records, whichever is smallest.

K.      **Accounts Receivable**

When there is proof that a loss to accounts receivables has occurred, the amount of claim shall be based on the Insured's monthly statements and shall be computed as follows:

1.      When the Insured cannot accurately establish the total amount of accounts receivable outstanding as of the date of Damage, the amount of claim shall be calculated as follows:

       (a)      Determine the amount of all outstanding accounts receivable at the end of the same fiscal Month in the year immediately preceding the year in which the Damage occurs;

       (b)      Calculate the percentage of increase or decrease in the average monthly total of accounts receivable for the twelve (12) months immediately preceding the Month in which the Damage occurs, or such part thereof for which the Insured has

furnished monthly statements to the Company, as compared with such average for the same months of the preceding year;

(c)    The amount determined under **Subparagraph (a)** above, increased or decreased by the percentage calculated under **Subparagraph (b)** above, shall be the agreed total amount of accounts receivable as of the last day of the fiscal Month in which Damage occurs; and

(d)    The amount determined under **Subparagraph (c)** above shall be increased or decreased in conformity with the Normal fluctuations in the amount of accounts receivable during the fiscal Month involved, due consideration being given to the experience of the business since the last day of the last fiscal Month for which statement has been rendered.

2.    When the Insured can accurately establish the total amount of accounts receivable outstanding as of the date of Damage, the amount of claim shall be calculated as follows:

(a)    The amount(s) due the Insured from customer(s), provided the Insured is unable to effect collection thereof as the direct result of Damage to records of accounts receivable;

(b)    Interest charges on any loan taken by the Insured during the period of adjustment hereunder made uncollectible by such Damage;

(c)    Additional collection expense that would not have been incurred but for the Damage; and

(d)    Expenses reasonably incurred by the Insured in recreating physical records of accounts receivable following such Damage.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would normally have been uncollectible by the Insured. All unearned interest and service charges shall be deducted.

L.    **Property in Transit**

The amount of claim shall be calculated at the value stated on the invoice, including prepaid or advanced freight, if any, plus the profit or commission of the Insured as selling agent, and such other costs and charges as may have accrued and become legally due thereon since shipment. In the absence of an invoice, the measure of loss shall be Actual Cash Value at the point of shipment.

M.    **Catalysts, Refractory Materials, and Crucibles**

For catalyst(s), Refractory Materials, and crucibles, the amount of recovery shall be the Replacement Cost times the remaining useful life factor.

For each such item, the remaining useful life factor is determined by the ratio of "the normal useful life in months" less "the number of months in use" divided by "the normal useful life in months".

N.    **Other Insured Property**

For any other Insured Property not specifically addressed or qualifying under one of the foregoing valuation paragraphs, the amount of claim shall be calculated at the Actual Cash Value.

## Time Element Section

I. **Direct Time Element Insurance**

If (and only if) there is Damage to Insured Property caused by an Insured Cause of Loss during the Policy Term, and subject to Company's acceptance of coverage for that Damage, then this policy also insures the following types of Time Element coverages resulting directly from that Damage:

A. **Business Interruption**

The necessary interruption of the Insured's business based on the method by which business interruption values were reported by the Insured and accepted by the Company for the specific Insured Premises where the insured Damage took place. The following agreements apply to the selection of method for calculating business interruption.

1. If the underwriting records establish to the Company's satisfaction that the Insured submitted values for business interruption at the specific Insured Premises based on Gross Earnings or Gross Profit, then business interruption shall be calculated on the basis established by those records.

2. If the underwriting records do not establish to the Company's satisfaction that the Insured submitted values for business interruption at the specific Insured Premises based on Gross Earnings or Gross Profit, then the method producing the lesser business interruption claim shall be used in the calculation.

3. If the claim involves a specific Insured Premises for which the Insured permissibly did not submit values at that Location for business interruption, then the Gross Earnings or Gross Profit method producing the lesser business interruption claim shall be used in the calculation.

4. Any business interruption claim must be on a Gross Earnings or Gross Profit basis. Any claim seeking recovery for both calculations or for any other method of calculation is invalid and will not be paid by the Company.

5. Consistent with these agreements, any claim shall be calculated on one of the following methods:

   (a) **Gross Earnings Method**

   The actual loss sustained by the Insured directly resulting from such interruption of business, but not exceeding the reduction in Gross Earnings less charges and expenses which do not necessarily continue during the interruption of business.

   Due consideration shall be given to the continuation of Normal charges and expenses, including payroll expenses as reported by the Insured in its most recent pre-Damage statement of values to the Company, to the extent necessary to resume operations of the Insured with the same quality of service which existed immediately preceding the Damage.

   (b) **Gross Profits Method**

   The actual loss sustained by the Insured due to the loss of Gross Profit resulting from (i) reduction in Sales and (ii) increase in cost of doing business. The amount payable as indemnity hereunder shall be as follows:

   (1) The reduction of Sales shall be the sum produced by applying the Rate of Gross Profit to the amount by which the Sales during the Indemnity Period shall fall short of the Standard Sales; and

(2)     The increase in cost of doing business shall be the additional expenditure necessarily and reasonably incurred for the sole purpose of avoiding or diminishing the reduction in Sales which, but for that expenditure, would have taken place during the Indemnity Period, but not exceeding the sum produced by applying the Rate of Gross Profit to the amount of the reduction thereby avoided;

all less any sum saved during the Indemnity Period with respect to such of the Insured Fixed Charges as may cease or be reduced because of such interruption of business.

In calculating Gross Profits:

(1)     If any Fixed Charges of the business are not insured under this policy, then, in computing the amount of recovery hereunder as increase in cost of doing business, that proportion only of the additional expenditure shall be recoverable hereunder which the sum of the Net Profit and the insured Fixed Charges bears to the sum of the Net Profit and all the fixed charges.

(2)     If during the Indemnity Period goods shall be sold or services shall be rendered elsewhere than at the Insured Premises where Damage occurred for the benefit of the business, either by the Insured or by others on the Insured's behalf, the money paid or payable in respect of such Sales or services shall be included in arriving at the amount of Sales during the Indemnity Period. The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in order to continue Sales and reduce the loss of Gross Profits under this policy.

**B.     Extra Expense**

Extra expense incurred by the Insured after Damage to the extent necessary to continue as nearly as practicable the Normal operation of the Insured's business at the Insured Premises where the Damage took place.

Extra expense shall be the reasonable and necessary excess (if any) of the total cost incurred as a result of Damage during the period of indemnity chargeable to the operation of the Insured's business over and above the total cost that would normally have been incurred to conduct the business during the same period had no Damage occurred. Any salvage value of property obtained for temporary use during the period of indemnity which remains after the resumption of Normal operations shall be taken into consideration in the adjustment of any extra expense claim.

Extra expense does not include any:

1.      Loss of income;

2.      Cost of repairing or replacing any real or personal property, or the cost of research or other expense necessary to replace or restore books of account, abstracts, drawings, card index systems or other records (including film, tape, disc, drum, cell or other magnetic recording or storage Media for electronic data processing) that have been damaged, except cost in excess of the Normal cost of such repair, replacement or restoration necessarily incurred for the purpose of reducing claim for extra expense; or

3.      Any expense insured elsewhere, including under any other provision of this policy.

C.      **Leasehold Interest (Excess Rent)**

If the Insured holds a lease that is canceled by the lessor following Damage, the Insured's excess rent as Leasehold Interest for the first three (3) months following that Damage, and the Insured's Net Leasehold Interest for the remaining unexpired term of the lease up to a maximum of twelve (12) months.

D.      **Rental Value**

The Insured's loss of rent for Insured Property at an Insured Premises to the extent that Damage renders such real property untenable.

The loss of rents shall be calculated based on the actual loss sustained by the Insured resulting directly from necessary untenantability, caused by the Damage (whether rented at the time of Damage or not), but not exceeding the resulting reduction in fair market rental value of the Insured Property less charges and expenses which do not necessarily continue during the period of indemnity.

If the Insured is the lessor, rental value shall be calculated as the sum of the following:

1.      The total anticipated gross rental income from tenant occupancy of the Insured Premises during the period of indemnity as furnished and equipped by the Insured;

2.      The amount of all occupancy charges which were the legal obligation of the tenant(s), but which, during the period of indemnity, are now the obligations of the Insured; and

3.      The fair rental value of any portion of said property which was occupied by the Insured but which cannot now be occupied during the period of indemnity.

If the insured is the lessee of Insured Premises and is not entitled to cancel the lease following Damage, rental value shall be extended to pay the amount of rent for untenable real property that the Insured is obligated to pay to the lessor during the period of indemnity including incidental tenant charges the Insured must continue to pay, less any charges and expenses which do not necessarily continue.

E.      **Research and Development**

The necessary interruption of research and development at any Location where those activities were conducted at the time of Damage. This insurance only applies to the extent the research and development did not itself produce income to the Insured. The amount of any claim shall be calculated as the actual loss sustained by the Insured for continuing fixed charges and ordinary payroll directly attributable to the interruption of these activities.

II.     **Contingent Time Element Insurance**

If (and only if) there is damage to the property of third parties that qualifies under the requirements below, then this policy also insures the following types of Time Element coverages directly resulting therefrom:

A.      **Contingent Business Interruption**

Necessary interruption of the Insured's business directly resulting from Contingent Damage to Dependent Properties.

Any contingent business interruption claim by the Insured shall be calculated on the same basis as a direct business interruption claim under **Paragraph I.A. (Business Interruption)** above.

B.   **Interruption by Civil or Military Authority**

If, as a direct result of Contingent Damage within ten (10) statute miles of Insured Premises, any civil or military authority specifically prohibits by order access to any Insured Premises, the actual loss sustained by the Insured at that premises is insured during the length of time not exceeding thirty (30) consecutive days after that order is issued.

C.   **Ingress/Egress**

If, as a direct result of Contingent Damage within ten (10) statute miles of Insured Premises, the Insured is physically prevented or materially hindered from access to or from the Insured Premises, then the necessary interruption of business is insured for a period not exceeding thirty (30) consecutive days after the Insured's use is first prevented or hindered.

D.   **Off-Premises Service Interruption**

The necessary interruption of the Insured's business directly resulting during the Policy Term from Contingent Damage to off-premises utility and power stations, substations, transformers, switching or pumping stations, or Transmission and Distribution Lines resulting from the interruption of incoming communication, electricity, steam, water, natural gas or refrigeration to the Insured Premises, or from the interruption of outgoing sewerage from the Insured Premises. As respects Transmission and Distribution Lines, this coverage only shall apply to damage within one thousand (1,000) feet of the property line as defined in Insured Premises.

It is a precondition that the waiting period shown in the Declarations shall first apply and be measured from the time when an interruption of specific services to the Insured occurs until the time when, with due diligence and dispatch, the service could be wholly restored.

This policy does not cover loss resulting from any interruption of business as a result of interruptions involving:

1.      Satellites;

2.      Internet and/or intranet access; or

3.      Any form of wireless communication.

E.   **Royalties**

Income to the Insured for any royalty, licensing fee or commission agreement that cannot be earned solely because of Contingent Damage but limited to the actual loss directly sustained by the Insured. The amount of any claim shall be calculated as the amount the Insured would have earned during the period of restoration had no Contingent Damage occurred.

III.   **Additional Time Element Provisions and Extensions**

A.   **Period of Indemnity**

Any Time Element coverage is limited to the length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged. The period of indemnity commences with the date of damage, or as applied to contingent Time Element the date of Contingent Damage. A period of indemnity commencing during the Policy Term continues during the period of due diligence and dispatch which may extend beyond the Policy Term.

This period of indemnity does not include (i) any additional time required for making any change(s) to such property for any reason except as insured under the building law provision set forth in **Paragraph III.C. (Demolition and Increased Cost of Construction)** of the **Physical Property**

Section of this policy, or (ii) any additional time due to the Insured's inability to resume operations regardless of the reason.

This period of indemnity does not apply for any Time Element claim involving the Gross Profit method of valuation and calculation.

B.   **Extended Period of Indemnity**

If (and only if) the Declarations provide more than zero (0) days for an extended period of indemnity, then the Time Element coverage is extended for the number of days stated in the Declarations in which, with the exercise of due diligence and dispatch, the Insured may restore the Insured's business to the condition that would have existed had there been no Damage or Contingent Damage. This extended period begins with the later of the following dates:

1.   The date on which the Company determines that the period of indemnity provided above has ended; or

2.   The date on which the Insured has replaced, repaired or rebuilt that part of damaged property that caused the Time Element loss (excepting Finished Goods) and is now in a position to resume Normal operations.

This extended period of indemnity does not include any additional time required for making any change(s) to property for any reason except as insured under the building law provision set forth in **Paragraph III.C. (Demolition and Increased Cost of Construction)** of the **Physical Damage Section** of the policy.

This extended period of indemnity is not provided for any Time Element claim involving the Gross Profit method of valuation and calculation.

C.   **Experience of the Business**

In determining the amount of Time Element loss as insured by this policy, the experience of the business before the loss and the probable experience thereafter had no such loss occurred shall be considered.

D.   **Expenses Proven to Reduce Loss**

To the extent not specifically provided for elsewhere in the **Time Element Section**, if the Insured incurs expenses proven to reduce the amount of any covered claim otherwise recoverable under this policy, then the amount of those expenses are insured:

1.   Where necessarily incurred for the purpose and effect of reducing Time Element loss under this policy; and

2.   Where incurred, in excess of Normal, for the purpose and effect of replacing any Finished Stock that was used to reduce Time Element loss under this policy;

but in no event shall the aggregate of such expenses exceed the amount by which the Time Element loss otherwise payable under this policy actually was reduced.

E.   **Time Element Values**

The Insured shall report to the Company full and accurate Time Element values at the time it reports physical property values in accordance with the **Report of Values Requirement** provision of this policy.

F.    **Resumption of Operations**

If the Insured could reduce the Time Element claim by any of the following:

1.    Complete or partial resumption of operation of business, whether at the Insured Premises where Damage occurred or elsewhere; or

2.    Making use of any material (Raw Stock, Stock in Process, or Finished Stock) or Merchandise; or

3.    Making use of any available Dependent Properties or other facilities capable of reducing the Time Element claim,

then such reduction shall be applied and taken fully into account in arriving at the correct amount of claim hereunder.

If the claim involves extra expense, the Insured shall resume Normal operation of the business as soon as practicable and end such extra expense.

G.    **Soft Costs and Delay in Start Up**

If Insured Property is under construction or erection at the time of Damage and, as a direct result, there is a delay in the most recent planned project completion date, the necessary and reasonable expenses in the following categories only are insured to the extent they were (i) incurred solely because of the Damage; and (ii) actually sustained between that planned project completion date and the actual project completion date:

1.    Additional interest expense
2.    Developer overhead
3.    Real estate taxes
4.    Legal/professional fees
5.    Marketing expenses
6.    Advertising expenses
7.    Debt service payments
8.    Insurance premiums
9.    Refinancing charges
10.   Bond interest
11.   Finders fees refunds

The amount of any Time Element loss resulting from such a delay shall be calculated based on the insured business interruption at that Location that was sustained during the additional length of time required by the Insured with due diligence and dispatch to complete the project to achieve the level of business operations that would have been reasonably achieved, giving due regard to experience, after construction and start-up had no Damage occurred.

IV.   **Time Element Exclusions**

This policy does not insure:

A.    **Finished Stock**

Time Element resulting from Damage to Finished Stock nor for the time required to reproduce Finished Stock, except for the treatment of Finished Stock as specially defined for Gross Profit Calculation.

B.    **Idle Periods**

Time Element for any period during which business would not or could not have been conducted for any reason other than Damage.

C.     **Leases, Licenses, Contracts, Orders**

Any increase of Time Element loss resulting from the suspension, lapse or cancellation of any lease, license, contract or order unless such suspension, lapse or cancellation results directly from the insured interruption of business caused by Damage, and then there shall be insurance for only such Time Element loss as affects the Insured's earnings (excluding imposed fines, penalties or other damages at law) during, and limited to, the period of indemnity insured under this policy.

D.     **Newly Acquired and Unnamed/Unreported Locations**

Time Element for newly acquired Locations or at any Unnamed/Unreported Locations unless an amount is specifically stated for that property in **Paragraph G. (Sublimits)** of the Declarations and unless the Insured has satisfied all requirements in this contract with respect to that property.

E.     **Transit**

Time Element involving transit.

## Exclusions Applicable to All Sections

I.     **Types of Damage**

The following types of damage (including but not limited to Damage and Contingent Damage) and resulting Time Element are not insured under any circumstance, regardless whether caused by or resulting from an Insured Cause of Loss:

**A.**    1.    Indirect or remote damage;

2.    Delay or loss of market; loss of bonuses or penalties for noncompletion of (or delay in completion of) any contract or for noncompliance with any contract conditions; fines, penalties or legal damages; or any costs incurred to eliminate or reduce any of the foregoing.

**B.**    The cost of correcting or making good:

1.    Faulty workmanship and/or faulty processing, material, construction or design; or

2.    Inherent or latent defect.

**C.**    Unexplained or mysterious disappearance of any property, or shortage disclosed by audit or upon taking inventory.

**D.**    1.    Wear and tear, deterioration, depletion, erosion, rust or corrosion;

2.    The presence or effect of any microorganisms, including but not limited to mold, mildew, fungus, spores, virus or biological agent;

3.    The presence or effect of any radioactive, chemical or biological material in, on, or around property in a concentration harmful to human health that limits access to or use of that property (except to the extent specifically provided for in **Physical Property Section, Paragraphs III.F. (Pollutant(s) and/or Hazardous material Cleanup and Removal)** and **III.B. (Decontamination Costs)** or the exception to **Exclusion III.H. (Nuclear and Radioactivity Exclusion)** below);

4.    Wet or dry rot;

5.    Settling, cracking, shrinkage, bulging or expansion of pavements, foundations, walls, floors, roofs or ceilings;

6.    Shrinkage, evaporation, leakage of contents, change in flavor or texture or finish, decay or other spoilage (except as provided elsewhere in this policy); or

7.    Cumulative effects of smog, smoke, vapor, liquid or dust.

II.    **Causes of Loss – Insured Control**

The following causes of loss and any Damage and Time Element arising directly or indirectly therefrom are not insured, regardless whether any other cause or event contributed concurrently or in any other sequence:

**A.**    Fraudulent or dishonest act or any act intended to result in the financial gain of the Insured or of any associate, proprietor, partner, director, trustee, officer, employee or carrier for hire or bailee of any Insured.

**B.**    Increase in hazard by any means within the control or knowledge of any Insured, unless endorsed hereto.

C.     Stock in Process, Finished Stock or Merchandise when Damage is caused by or results from manufacturing, processing, testing or other work by the Insured or by anyone for the Insured.

D.     Animals, vermin or insects.

E.     Dampness or dryness of atmosphere, or extremes or changes of temperature causing Damage to Insured Property that the Insured could have controlled with due diligence.

III.   **Other Identified Causes of Loss**

The following identified causes of loss and, except as expressly provided in the individual sections below, any damage (including but not limited to Damage and Contingent Damage) and Time Element arising directly or indirectly therefrom are not insured, regardless whether any other cause or event contributed concurrently or in any other sequence:

A.     **Asbestos Exclusion**

1.     Asbestos material defects, treatment, abatements or removal, unless the asbestos itself is damaged by the peril of fire, lightning, or explosion and then only as to the physical portion of asbestos material damaged on impact by that peril;

2.     Regardless of cause, any sum relating to (i) health hazard from asbestos; (ii) treatment, abatement or repair of asbestos material that has become friable; or (iii) demolition, increased cost of reconstruction, removal or any type of cost or loss arising from the enforcement of or compliance with any law or ordinance regulating asbestos material; or

3.     Any governmental requirement relating to asbestos material present in or part of any portion of Insured Property that was not damaged by fire, lightening or explosion during the Policy Term and cannot any longer be used where installed.

B.     **Biological and Chemical Exclusion**

Pathogenic or poisonous biological or chemical material in any circumstance limiting or otherwise adversely affecting the condition, occupation, use or productivity of Insured Premises or other property, including any claimed Damage or Time Element resulting therefrom.

C.     **Computer Acts Exclusion**

1.     Crime(s), vandalism or malicious act(s) using computer equipment, codes or media, including but not limited to:

(a)    Harmful or corrupting codes, instruction or messages;

(b)    Electronic attack directed to the Insured's equipment or systems; or

(c)    Hacking or any other form of electronic intrusion.

2.     Computer Virus, however arising or introduced to Insured Property, including but not limited to any loss, Damage, loss of functionality, slow-down, malfunction, destruction, distortion, interruption, erasure, corruption or alteration of Electronic Data.

If circumstances excluded in **Subparagraphs 1 or 2** directly result in Damage by fire or explosion, then the policy shall cover the ensuing Damage and Time Element loss that directly results therefrom.

D.   **Construction Design/Build Exclusion**

If any excluded cause of loss contributes in any way to Damage, then this policy does not insure Damage caused by any act, error or omission (whether by the Insured or others) with respect to:

1.   Planning, zoning, surveying, siting or developing property;

2.   Establishing or enforcing building codes or standards for construction or materials;

3.   Designing, establishing the specifications, furnishing work, materials, parts or equipment, or constructing or maintaining the following property or facilities:

   (a)   Buildings or structures;

   (b)   Improvements or changes in or additions to land or other property; or

   (c)   Roads, water mains, sewers, drainage ditches, levees, dams or other facilities

regardless whether such property or facilities are insured under this policy and wherever they may be located.

E.   **Electronic Date Processing Exclusion**

1.   Any loss, Damage, cost, claim, expense, or other sum directly or indirectly arising out of or relating to Date Processing. This exclusion applies regardless of the form, ownership or location of property.

2.   If circumstances excluded in **Subparagraph 1.** directly produce an Insured Cause of Loss, then the policy shall cover the ensuing Damage and Time Element loss that directly results therefrom. All claims qualifying for coverage under this paragraph are part of the same Occurrence.

3.   Under no circumstance (including those in **Subparagraph 2.**) shall this policy cover any cost, expense or other sum, whether preventative, remedial, or otherwise, to examine, repair, replace, upgrade, alter, or otherwise assess or correct Date Processing.

F.   **Law and Interference Exclusion**

Except as expressly provided in the **Physical Property Section** of this policy, any sum beyond the cost of actual physical repair or replacement that is attributable directly or indirectly to:

1.   Enforcement of any law, ordinance, regulation or rule regulating or restricting the construction, installation, repair, replacement, demolition, occupancy, operation or other use of property on Insured Premises, or which requires process improvements or process modifications to property, when either is required or performed to comply on the Insured Premises with either OSHA regulations or other similar work place safety regulations; or

2.   Interference at Insured Premises, by strikers or other persons, with rebuilding repairing or replacing property or with the continuation or resumption of business.

G.   **Molten Materials Exclusion**

Spill, release or discharge of any material liquified by heat or in a state of fusion. This exclusion applies without limitation to (i) repairing any fault or flaw associated in any way with such spill, release, or discharge; (ii) any cost of removing or recovering the material; and (iii) any claim that such material constitutes Pollutant(s) or Hazardous Material.

H.     **Nuclear and Radioactivity Exclusion**

Nuclear reaction, or nuclear radiation, or radioactive contamination, all whether controlled or uncontrolled and wherever occurring. However, two forms of ensuing loss are not excluded:

1.     If nuclear reaction, nuclear radiation, or radioactive contamination directly causes a fire, the Damage and Time Element caused solely by that fire is insured hereunder. This exception does not provide or permit insurance for the nuclear reaction, nuclear radiation or radioactive contamination, or for any sum relating to them.

2.     If there is an abrupt, sudden and accidental event resulting from an Insured Cause of Loss on Insured Premises that immediately results in radioactive contamination, then Damage is insured hereunder if all of the following requirements are met:

   (a)   The radioactive contamination arises out of material on Insured Premises which is known to be radioactive;

   (b)   The radioactive material is kept on Insured Premises for the purpose of the Insured's operations;

   (c)   At the time of Damage, the Insured Premises do not include: (i) a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction; or (ii) any nuclear fuel that is intended for or which has been used in a nuclear reactor; and

   (d)   The event did not involve the act of any person(s) or group(s) intending to create, cause or use radioactive contamination to harm others or their property.

I.     **Pollutant(s) and/or Hazardous Material Exclusion**

Except as expressly provided in the **Physical Property Section** or the radioactive contamination exception in **Exclusion III.H. (Nuclear and Radioactivity Exclusion)** above, any Damage due to the discharge, dispersal, seepage, migration, release or escape of Pollutant(s) and/or Hazardous Material.

Regardless of cause, this policy does not insure expenses, fines, penalties or costs incurred or sustained by any Insured or imposed on any Insured at the order of any government agency, court or other authority in connection with any kind or description of environmental impairment, including seepage or pollution or contamination from any cause.

J.     **Terrorism Exclusion** [HFP 144 (01-08)]

Notwithstanding any provision to the contrary within this policy or any endorsement attached thereto it is agreed that this policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss, except as provided by the Certified Act(s) of Terrorism Endorsement provided that said endorsement is attached to this policy.

This policy excludes loss or damage caused by fire that is part of or arises directly from terrorism. However, with respect to insured locations in the United States, its territories and possessions and Puerto Rico, in the event that the law of the jurisdiction where the insured property sustaining loss or damage requires that damage caused by fire be covered, then this policy covers such loss or damage but only for the physical loss or damage, with adjustment being at the lesser of actual cash value, the cost to repair or the cost to replace, all as of the date of the loss at the location of the loss, for no more than the interest of the Insured and without allowance for upgrades to comply with codes or building laws. This coverage exception for such resulting fire loss or damage does not apply to any time element coverages; including but not limited to business interruption, loss of

  
earnings, extra expense, contingent coverage(s), leasehold interest or rental insurance; nor for any fire legal liability.

For the purpose of this endorsement an act of terrorism means the intentional conduct by any person(s) or group(s) causing loss or damage and/or the threat thereof, in order to induce fear, submission or otherwise influence people or government(s), or to promote, publicize or advance any ideological, religious, social or political cause.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Company alleges that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall continue in full force and effect.

K.    **War Risk Exclusion**

1.    Hostile or warlike action in time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack or invasion by any of the following:

    (a)    Any government or sovereign power (de jure or de facto), or by any authority maintaining or using military, naval or air forces;

    (b)    Military, naval or air forces; or

    (c)    An agent of any such government, power, authority or forces.

    Any discharge, explosion or use of any weapon or non-commercial device employing nuclear fission or fusion is conclusively presumed to be excluded as a hostile or warlike action by a government, power, authority or force;

2.    War, invasion, act of foreign enemy, hostilities or warlike operations (whether war to be declared or not), civil war, mutiny, insurrection, rebellion, revolution, military or usurped power, civil commotion seeking to promote a popular or military uprising, or any act of any person acting on behalf of or in connection with any organization with activities directed toward the overthrow by force of a government de jure or de facto or action taken by governmental authority in hindering, combating or defending against such action; or

3.    Seizure, confiscation, quarantine, nationalization or destruction by order of public authority unless necessary to prevent the spread of a fire from an Insured Cause of Loss.

## Terms and Conditions Applicable to All Sections

I.      **Undertakings**

    A.      **Abandonment**

        Neither the Insured nor any loss payee shall abandon to the Company any property, except with the consent of the Company.

    B.      **Assignment**

        Assignment of the policy shall not be valid except with the express written consent of the Company.

    C.      **Cancellation**

        This policy may be canceled at any time by the Insured by surrender thereof to the Company or to a duly authorized agent of the Company or by mailing to the Company written notice stating when thereafter such cancellation shall be effective.

        This policy may be canceled by the Company by mailing to the Insured at the address shown in this policy or last known address written notice stating when, not less than ninety (90) days thereafter, such cancellation shall be effective. The mailing shall be sufficient proof of notice.

        If the Insured fails to pay premium when due, this policy may be canceled by the Company by giving the Insured not less than ten (10) days written notice.

        The date of the Insured's surrender or the effective date of the Company's cancellation stated in the notice shall become the new expiration date of the Policy Term. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

        The Named Insured listed in the Declarations is the sole agent for all Insured's in tendering and receiving cancellation notices.

        Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. If the Company cancels, earned premiums shall be computed pro rata for any period when the policy was in effect. If the Insured cancels, the premium retained by (or due to) the Company shall be computed using the short rate applicable. The Company's check or the check of their representative mailed or delivered as aforesaid shall be a sufficient tender of any refund of premium due to the Insured.

    D.      **Certificates of Insurance**

        The Company grants permission to the producer of the Insured's account to issue certificates of insurance to mortgagees, loss payees and for evidence only provided that each certificate (i) is fully subject to the entire policy; (ii) does not increase the financial exposure or obligation of the Company; (iii) is not issued to any mortgagee that is also an additional insured hereunder; and (iv) is filed with the Company within fourteen (14) days after issuance. Any breach of the requirements for a certificate automatically renders that certificate void for all purposes.

    E.      **Concealment, Misrepresentation, Omission or Fraud**

        This policy is void where there is fraud by the Insured at any time. This policy also is void if the Insured at any time intentionally conceals or misrepresents or omits a material fact it knew or should have known concerning:

1.    Values, loss history, business, protections, or contingent exposures;

2.    Placement or application of the policy;

3.    The Insured Property or Dependent Properties; or

4.    Any claim hereunder.

**F.    Maintenance of Underlying Policies**

If this policy is placed excess of a primary insurance policy with a narrower scope of insurance, this policy shall still provide insurance as written, provided that the Insured shall account in full for the amount of the primary limit and the limit or sublimit(s) provided by the Company shall be reduced by that amount.

Any primary or other underlying policy in force at the inception of this policy will be maintained by the Insured during the Policy Term, and any renewals or replacements of such policies will not be more restrictive than the current insurance.

Under no circumstance shall the Company drop down or step down to become primary or underlying insurance, and the Company shall always be excess in any Occurrence of the amounts shown in the Declarations for deductible(s) and any primary or other underlying insurance. Where there is an underlying aggregate limit, the Company shall pay only where the records presented establish to its satisfaction that the full underlying limit has been properly exhausted by insurance payments for covered Occurrences during the Policy Term.

**G.    Errors and Omissions**

It is a material requirement of this contract that the Insured accurately report the values of the property for which it seeks insurance at the Locations within the Territory where that Property is located. Subject to this requirement, the Company will not preclude coverage for Damage at a particular Location where the Insured or its producer made an error or unintentional omission:

1.    In the description or location of item(s) of property in the most recent statement of values or documentation submitted to and accepted by the Company, provided that the item is the type insured under the policy.

2.    In the listing of Location(s) so that the report omitted a Location(s) owned or occupied by the Insured at the inception date or that became a Newly Acquired Location(s) during the Policy Term, provided that the Location was not among the top ten (10) Locations in values and was not omitted from more than one report.

Any such error or unintentional omission shall be reported promptly on discovery and additional premium paid from policy inception. The maximum amount of indemnity any claim involving an error or omission is the sublimit for Unnamed/Unreported Locations or, if greater, the errors and omissions sublimit shown in the Declarations.

**H.    Excess Insurance**

Permission is granted to the Insured to place excess insurance over the limit(s) set forth in the Declarations without prejudice to this policy, and the existence of such insurance, if any, shall not reduce any amount otherwise payable under this policy.

**I.    Identity of interests**

Assignment of the policy shall not be valid except with the express written consent of the Company. If the Named Insured is comprised of more than one legal entity, the Company's

obligation for Damage and Time Element shall not exceed the amount that would be due had all interests comprised a single legal entity.

J.    **Inspection of Property and Operations**

The Company shall be permitted but not obligated to inspect the Insured's property and operations at any reasonable time. Neither (i) the right to make inspections; (ii) the making thereof; (iii) any risk analysis for any hazard or peril; or (iv) any advice or report resulting therefrom shall imply any responsibility or constitute an undertaking of any kind to determine or warrant that such property or operations are proper, safe, or are in compliance with any law, rule or regulation.

K.    **No Control**

This insurance shall not be affected by failure of the Insured to comply with any requirements of this policy concerning the safeguarding or rebuilding of any portion of the premises of others over which the Insured has no control with respect to such matters prior to or at the time Damage occurs.

L.    **Other Insurance**

If, at the time of Damage, there is any other valid or collectible insurance for Damage or Time Element that was not placed excess of this insurance, then this insurance shall apply only as excess and in no event as contributing insurance, and then only after all other insurance has been exhausted.

M.    **Pro Rata Liability**

The Company shall not pay for a greater proportion of any covered claim than the amount hereunder insured shall bear to the whole insurance covering the Insured Property, whether collectible or not. Where the Insured retains part of a layer for its own account, it shall be treated as a commercial insurer for all aspects of that share, including but not limited to pro rata liability and other insurance obligations.

N.    **Report of Values Requirement**

On or before thirty (30) days before the policy inception date, and annually thereafter during the Policy Term, the Insured shall file with the Company an accurate report of current values for physical property and Time Element for Insured Property at each separate Location insured by this policy. The Company shall have a reasonable opportunity to review and accept the reports, and the Insured warrants that the Company may rely on the accuracy of these report(s).

The report of physical property values shall coincide with the valuation provisions of this policy. The report of Time Element values shall include the estimated values for the twelve (12) consecutive months immediately following the date of the report, as well as the actual Time Element values for the twelve (12) consecutive months immediately preceding the date of the report.

O.    **Suspension of Insurance**

The Insured shall advise the Company in writing immediately upon discovery of a dangerous condition with respect to any boiler, fired or unfired vessel, refrigerating or air conditioning system, piping and its accessory equipment and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power, which may result in Damage if not corrected.

Upon receipt of that advice or discovery of the condition through other means, the Company may, at its discretion, immediately suspend the insurance with respect to Damage to such property by written notice mailed or delivered to the Insured at the address of the Insured, or at the location of the property, or as otherwise specified in this policy. Insurance so suspended may be reinstated by

the Company, but only by a duly authorized written endorsement issued to form a part hereof. The Insured shall be allowed the unearned portion of the premium paid for such suspended insurance, pro rata, for the period of suspension.

P. **Titles of Paragraphs**

The titles of the various paragraphs of this policy wording (and of endorsements and supplemental contracts, if any, now or hereafter attached to this policy) are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

Q. **Underlying Insurance**

The Insured may purchase insurance on all or any part of the deductibles of this policy, and the existence of such underlying insurance shall not prejudice any recovery otherwise payable under this policy. The existence or absence of such underlying insurance shall not in any way reduce the Company's right to deduct from any covered claim the full amount(s) of the deductibles as shown in the Declarations. If the limits of such underlying insurance exceed the deductible which would apply under this policy, then the insurance provided by this policy shall apply only as excess after payment of that portion which exceeds such deductible has been exhausted.

## II. Calculations

A. **Currency**

Premium and any covered claim(s) shall be payable in United States dollars.

B. **Tax Treatment of Certain Profits**

Where there is Damage to Insured Property by an Insured Cause of Loss that is fully adjusted as a covered claim for profits relating either to Finished Stock or business interruption, the amount payable by the Company shall include any difference between the tax the Insured would have paid on either type of profits had no loss occurred, and the total tax the Insured must now pay following Damage for:

1. The profits on Finished Stock manufactured or purchased by the Insured; or

2. The profits for business interruption had Damage and Time Element loss not occurred.

## III. Claims Process

A. **Appraisal**

In case the Insured and the Company fail to agree as to correct adjusted amount of any covered claim under this policy then, on the written demand of either, the Insured and the Company each shall select a competent and disinterested appraiser and notify the other of the person selected within thirty (30) days of such demand. The appraiser shall first select a competent and disinterested umpire, and failing for fifteen (15) days after consulting to agree upon such umpire, then, on request of the Insured or the Company, such umpire shall be selected by a judge of a court of record in the state in which the Insured Property sustaining Damage is located. The originally appointed appraisers shall then appraise the loss, stating separately the amount of Actual Cash Value and all other amounts potentially due hereunder for each item of Insured Property; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two (2) appraisers when filed with the Company shall conclusively, without right of appeal, determine all amounts submitted to appraisal. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the Insured and the Company equally.

**B.** **Claims Adjustment Assignment**

In the event of Damage, the Insured shall promptly provide the Company's claims personnel with all information necessary to investigate, document, evaluate, and adjust the claim. In the event that the Company elects to retain independent adjusters, engineers, accountants, consultants and other experts to assist in the claims adjustment, other insurers subscribing to or following this policy wording shall share those expenses.

If a specific loss adjuster is not appointed elsewhere in this policy, then the Company upon notification of a claim may assign a loss adjuster to investigate and evaluate a claim on its behalf.

**C.** **Insured's Duties in the Event of Damage**

The Insured shall do the following in the event of Damage to Insured Property:

1. Notify the police if a law may have been broken;

2. Give the Company prompt written notice of the Damage, including a description of the item(s) of property damaged, the cause of the Damage and the time it occurred;

3. Promptly provide the Company with documentation, reports, and records bearing on how, when and where the Damage occurred;

4. Take all reasonable steps to protect Insured Property from further Damage by any Insured Cause of Loss, including without limitation those steps (i) to set damaged property aside where possible; (ii) keep the property in the best possible order for examination; and (iii) record all expenses for emergency and temporary repairs for consideration in the settlement of the claim;

5. At the Company's request, provide complete inventories of the damaged and undamaged property that demonstrate to the Company's satisfaction the quantities, costs, values and amount of loss claimed;

6. Permit the Company to inspect the property and records and to take samples relating to the Damage and any Time Element loss;

7. At the Company's request, permit the Company to question under oath the Insured and its agents, and to obtain verified answers under oath at such times as may be reasonably required, concerning any matter relating to this insurance or the Insured's claim, including, without limitation, the Insured's books and records;

8. Within sixty (60) days after the Company's request, submit a signed, sworn statement of loss containing the information requested by the Company in the format specified by the Company;

9. Cooperate with the Company in the investigation or settlement, or other resolution of the claim.

The foregoing duties of the Insured are part of its contractual agreement in consideration of the premium. All sums incurred by the Insured to discharge these duties or otherwise to prepare and verify its claim are for its own account and are not insured under this policy.

**D.** **Interim Payments**

In the event the Company determines that Damage to Insured Property was caused by an Insured Cause of Loss and that the claim presented by the Insured is covered, in whole or in part, by this policy, then the Company agrees to consider interim payment(s) subject to policy provisions. To obtain such interim payment(s), the Insured must submit proof of loss accepted by the Company.

The Insured's claim must be in accordance with the valuation provisions contained in this policy, and the applicable policy deductible must be satisfied before any said interim payment will be considered or allowed.

E.      **Mortgagee Interests and Obligations**

If any payment due hereunder is claimed to be payable, in whole or in part, to a designated mortgagee or other creditor of the Insured not named herein as the Insured, such interest in this policy may be canceled by giving to such mortgagee or creditor a thirty (30) days written notice of cancellation.

If the Insured fails to render proof of loss, such mortgagee or creditor, upon notice, shall render proof of loss in the form herein specified within sixty (60) days thereafter and shall be subject to the provisions hereof relating to appraisal and time of payment and of bringing suit. If the Company shall claim that no liability existed as to the mortgagor or owner or debtor, it shall, to the extent of payment hereunder to the mortgagee, be subrogated to all mortgagee's or creditor's rights of recovery, but without impairing mortgagee's or creditor's right to sue; or the Company may pay off the mortgage debt and require an assignment thereof and of the mortgage. Other provisions relating to the interest and obligations of such mortgagee or creditor may be added hereto by agreement in writing.

F.      **Subrogation**

At the Company's request, the Insured shall provide an assignment of all right of recovery against any party to the extent that payment therefor is made by the Company. Prior to Damage, the Insured may waive by express written agreement with a third party its right to recover against that party for Damage, and this insurance shall not be invalidated by such a waiver. After Damage, the Insured shall do nothing to prejudice the subrogation rights of the Company. Regardless of the time of Damage, the Company expressly waives subrogation rights against any parent or subsidiary company of the Insured and/or corporation engaged in a joint venture with the Insured that also is insured under this policy.

In the event of a subrogation recovery, the net amount after deducting subrogation fees and expenses shall be divided between each party instituting such proceedings in the same proportion as each such party has borne the agreed Damage and Time Element loss.

G.      **Submissions to the Company for Claims**

Unless otherwise specified in writing by the Company, all claims-related submissions to the Company should be sent to:

Address:      XL Insurance America, Inc.
              Property and Energy Claims
              One World Financial Center, 27th Floor
              200 Liberty Street
              New York, New York 10281
              Attention: Property Claims Manager
              Phone: 800-688-1840 / Fax 866-740-6067

H.      **Suit and Choice of Law**

In the event that any disagreement arises between the Insured and the Company requiring judicial resolution, the Insured and the Company each agree that any suit shall be brought and heard in a court of competent jurisdiction within the State of New York. The Insured and the Company further agree to comply voluntarily with all the requirements necessary to give such court jurisdiction.

Any suit shall be barred (i) if commenced before the Insured has given notice and permitted the Company reasonable opportunity for adjustment; or (ii) if commenced more than twenty-four (24) months after the inception of Damage unless the Company agrees in writing after Damage to extend that suit limitation period.

The Insured and the Company further agree that New York law shall control the interpretation, application and meaning of this contract, whether in suit or otherwise.

I.  **When and To Whom Loss Payable**

The amount for which the Company has become obligated to pay shall be payable sixty (60) days after signed proof of loss, as herein provided, is received and accepted by the Company, and after ascertainment of the amount due is made by written agreement which is accepted between the Insured and the Company or by the filing with the Company of a duly awarded appraisal decision or a final court judgment.

Regardless of mortgagee, loss payee, or other interests, the Company may, at its sole discretion, make payments to the entity first named as the Insured in the Declarations, and that payment shall be effective, binding and final as to all insured interests in that payment.

---

## Definitions Section

Wherever used in the Declarations, policy wordings or endorsements, the listed words and terms shall have the meanings set forth below. For ease of reference, the first letter of these words and terms is capitalized where used in the contract.

I.     **General Application**

    A.     **Actual Cash Value**

        The amount it would cost to replace, repair or rebuild (whichever is less) the Insured Property at the site on the date of Damage (without allowance for contingencies or soft costs) with material of like kind and quality, less the adjusted deduction for deterioration, depreciation, obsolescence, and depletion. If the foregoing calculation produces a number greater than the fair market value of the Insured Property on the date of Damage, then the Actual Cash Value shall be limited to the fair market value.

    B.     **Company**

        The Company stated in the Declarations providing this insurance.

    C.     **Computer Virus**

        Any corrupting, harmful or otherwise disruptive instructions or codes, including but not limited to devices known as time or logic bombs, worms, or Trojan horses.

    D.     **Damage**

        Direct physical loss of, or direct physical damage to, Insured Property arising from an Occurrence that takes place during the Policy Term.

    E.     **Date Processing**

        The recognition, acceptance, differentiation, application, distribution or other processing of information involving one or more dates of any kind by any (i) computer system, hardware, program, software, or data therein; (ii) microchip, microprocessor or integrated circuit; or (iii) other device of any description.

    F.     **Declarations**

        The statement forming part of this contract that contains essential contract information such as the identity of the Insured, the Policy Term, premium, the limits and sublimits and the deductibles.

    G.     **Electronic Data**

        Facts, concepts, codes or any other information in electronic form, including but not limited to programs, software or instructions for electronic operations.

    H.     **Insured**

        The entity identified in the Declarations as paying premium to the Company in exchange for the insurance provided by this policy.

I.       **Insured Cause of Loss**

The fortuitous physical event during the Policy Term that directly and proximately causes during that period Damage of the type insured by this policy. Insured Cause of Loss does not include events or causes that commenced before the Policy Term, that are not fortuitous or known to the Insured, or that are excluded by the policy wording or any endorsement thereto.

J.       **Insured's Liability**

The amount that the Insured must pay to the owner to repair or replace physical property that sustains insured Damage when in the Insured's care, custody or control, provided that this obligation to pay arises because that property was:

1.       Accepted by the Insured by law as lessee or as bailee of equipment; or

2.       Assumed by the Insured by specific written agreement prior to loss for Damage resulting from an Insured Cause of Loss.

K.       **Insured Premises**

Facilities where Insured Property is located as described by the Insured in its most recent statement of values filed with and accepted by the Company. Insured Premises include newly acquired Locations, Unnamed/Unreported Locations and any Locations covered due to application of the **Errors and Omissions** provision, qualifying for insurance hereunder.

L.       **Insured Property**

Real or personal property located in the Territory and of the type presented by the Insured to the Company for insurance and not excluded under this policy wording or any endorsement thereto.

M.       **Location(s)**

Insured Premises made up of an insured building or group of buildings situated at a common place, including machinery and equipment, related structures and the contents of such buildings or structures, or on land within one thousand (1000) feet thereof.

N.       **Occurrence**

The physical source of Damage to Insured Property, regardless whether it creates more than one Insured Cause of Loss. One occurrence is the aggregate amount of all fully adjusted claims covered under this policy that arise from that physical source. In establishing the amount of the deductible, limit or sublimit to be applied for an Occurrence, the following shall apply:

1.       An Occurrence for Earth Movement means the sum total of all Damage and Time Element Losses insured hereunder during any period of seventy-two (72) consecutive hours by reason of Earth Movement;

2.       An Occurrence for Flood is the sum total of all Damage and Time Element Loss insured hereunder sustained during any period of seventy-two (72) consecutive hours by reason of Flood;

3.       An Occurrence for Named Storm or Windstorm is the sum total of all Damage and Time Element loss insured hereunder arising out of or caused by the same atmospheric disturbance during any period of seventy-two (72) consecutive hours;

4.      An Occurrence for any other Insured Cause of Loss involving progressive damage to a building is the sum total of all Damage and Time Element loss insured hereunder sustained during any period of seventy-two (72) consecutive hours;

5.      An Occurrence for any other Insured Cause of Loss involving a defect in construction in more than one building is the sum total of all Damage and Time Element loss insured hereunder with respect to each building;

6.      An Occurrence for any other Insured Cause of Loss arising from Terrorism or the plan or acts of any person is the sum total of all Damage and Time Element Loss insured hereunder sustained during any period of seventy-two (72) consecutive hours.

Should any time period referred to in **Subparagraphs 1. – 6.** above commence prior to the expiration date or cancellation date of this policy, this Company shall pay all Damage and Time Element loss occurring during such period as if such period fell entirely within the Policy Term. Nothing in this undertaking alters the fact that this policy does not insure any Damage commencing before the effective date and time, or commencing after the expiration date and time of this policy.

O.      **Policy Term**

The period stated in the Declarations from inception date to expiration date, including any change in expiration date made by written endorsement attached hereto or by cancellation as provided herein. The Policy Term for any property newly acquired by the Insured after inception date shall begin with the date of its addition to Insured Property under this policy.

P.      **Pollutant(s) and/or Hazardous Material**

Any solid, liquid, gaseous or thermal irritant, or contaminant or material posing a hazard to human health, including but not limited to vapor, soot, fumes, acids, alkalis, chemicals, lead (or lead products) and waste. Waste includes materials to be recycled, reconditioned or reclaimed. Pollutants and/or Hazardous Materials do not include asbestos or radioactive contamination, which are separately addressed elsewhere in this policy wording.

Q.      **Replacement Cost**

The lesser of:

1.      The cost to repair, rebuild or replace (whichever is smallest) on the same site with new materials of like kind and quality; or

2.      The actual expenditure incurred in repairing, rebuilding or replacing (whichever is smallest) on the same or another site.

Subject always to these limits, if the damaged property is rebuilt or replaced, the valuation shall give due allowance for equivalent space (measured either in square or cubic footage as applicable) and equivalent production capacity or functional utility for the Insured's business.

R.      **Territory**

The fifty (50) states of the United States of America and the District of Columbia.

S.      **Time Element**

The Insured's financial loss to earnings or profits as provided herein resulting directly (i) from Damage insured under the policy or (ii) under the contingent provisions of the **Time Element Section**, from damage at Dependent Properties from Contingent Damage hereunder.

T.    **Unnamed/Unreported Locations**

Insured Property at any Location where the Insured has not submitted to the Company physical property and Time Element values for its interests at that Location, or has chosen, with the Company's acceptance, to include in an accurate report of values for all such Locations. Unnamed/Unreported Locations do not include any property in transit, any property at any exhibition, exposition, fair or trade show, or any property excluded under this policy.

II.    **Physical Property and Time Element Terms**

A.    **Accounts Receivable**

Personal property of the Insured that constitutes records of debts owed to the Insured and, when damaged, deprives the Insured the ability to collect those debts, provided that this inability to collect debt does not result from an error in bookkeeping, accounting or billing and is reported to the Company within ninety (90) days of the Damage.

For the purpose of this definition only, credit card company charge records shall be deemed to represent sums due the Insured from customers, provided that such charge records had not been delivered to the credit card company at the time of Damage.

B.    **Fine Arts**

Paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture and silver, rare books, manuscripts, porcelains, rare glass and bric-a-brac, curios, and other similar property, all of which have the quality of rarity, historical value or artistic merit.

C.    **Finished Stock**

Stock manufactured by the Insured which in the ordinary course of the Insured's business is ready for packing, shipment or sale. For purpose of Gross Profit calculations, Finished Stock means the value of Raw Stock and labor expended, plus the proper proportion of manufacturing overhead charges.

D.    **Improvements and Betterments**

Fixtures, alterations, installations or additions comprising part of a building occupied but not owned by the Insured and acquired or made a part thereof at the expense of the Insured, which the Insured cannot legally remove.

E.    **Media**

Tape recordings, exposed film, programming records pertaining to electronic and electromechanical data processing or electronically controlled equipment or other similar records.

F.    **Merchandise**

Goods kept for sale by the Insured which are not Raw Stock, Stock in Progress or Finished Stock.

G.    **Month**

Thirty (30) consecutive days.

H.     **Refractory Material**

Primary materials used:

1.      in the internal linings of furnaces, ovens or kilns;

2.      in vessels for holding and transporting heated materials;

3.      in flues and stacks through which hot gases are conducted.

I.     **Stock in Process**

Raw Stock which has undergone any aging, seasoning, mechanical or other process of manufacture at Insured Premises but which has not become Finished Stock.

J.     **Transmission and Distribution Lines**

Wires, cables, poles, pylons, standards, towers or other supporting structures relating to the conveyance or transfer of power, electricity or communications.

K.     **Valuable Papers and Records**

Written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, but Valuable Papers and Records does not mean Fine Arts, Media or any item identified as property not insured under **Paragraphs II. B.** or **II.O. of the Physical Property Section**.

III.   **Additional Time Element Terms**

A.     **Actual Plant Value**

The Actual Plant Value shall be the total one hundred percent (100%) Time Element value for the period of indemnity divided by the number of working days in such period. The one hundred percent (100%) Time Element value shall be the total amount exposed and not the amount of loss actually sustained during the period of interruption.

B.     **Contingent Damage**

Direct physical loss of, or direct physical damage to, property of any third party that results directly from a cause of loss of the type insured under this contract.

Contingent Damage is not itself insured under this contract and is relevant only to the extent it directly causes a contingent Time Element loss to the Insured that is accepted by the Company for coverage.

C.     **Dependent Properties**

Real or personal property of the type insured under this policy that is located within the Territory and is owned or operated by third-parties doing business directly with the Insured in one of the following respects:

1.      Directly supplying material or services to the Insured for use in its business, except that such services do not include any utility or other services such as water, communication, power, electricity, steam, gas or sewerage;

2.      Directly accepting the Insured's products or services as customers of the Insured; or

3.      Manufacturing products under contract with the Insured for delivery directly to the Insured's customers under contract of sale.

Dependent Properties do not include the property of the entities with whom the Insured's supplier, customers, or contract manufacturers do business.

**D.      Fixed Charges**

All fixed charges of the business property sustaining Time Element Loss from Damage that necessarily continue, except as excluded in this contract.

**E.      Gross Earnings**

The sum of the following:

1.      Total net Sales value of production through the use of the Insured Property;

2.      Total net Sales of Merchandise;

3.      Other earnings derived from the operation of business

less the cost of the following:

4.      Raw Stock from which production is derived;

5.      Supplies consisting of materials consumed directly in the conversion of such Raw Stock into Finished Stock or in supplying the service(s) sold by the Insured;

6.      Merchandise sold, including packaging materials thereof; and

7.      Service(s) purchased from third parties (not employees of the Insured) for resale which do not necessarily continue under contract.

No other costs shall be deducted in determining Gross Earnings.

**F.      Gross Profit**

The amount produced by adding to the Net Profit the amount of the Fixed Charges, or if there be no Net Profit, the amount of the Fixed Charges less that proportion of any loss from business operations that the amount of the Fixed Charges bears to all fixed charges.

**G.      Indemnity Period**

The period beginning with the date of the Damage to Insured Property and ending not later than twelve (12) months thereafter (except as otherwise specifically provided in the Declarations of this policy or as per the accepted reported period of months on file with the Company) during which period the results of the business shall be directly affected in consequence of the Damage.

**H.      Leasehold Interest**

The amount of rent for similar replacement property excess of the original rent and other charges that would have been payable under the cancelled lease that must be paid by the Insured following Damage. The Insured's Leasehold Interest includes bonuses or advance rent the Insured must pay (including any maintenance, operating charges or taxes) for each Month during the indemnity period insured under this policy.

I.     **Net Leasehold Interest**

The present value of the amount, which placed at six percent (6%) annual interest, would equal the Leasehold Interest (less any amounts otherwise payable hereunder).

J.     **Net Profit**

The net operating profit (exclusive of all capital receipts and accruals and all outlay properly chargeable to capital) resulting from the business of the Insured at Insured Premises after due provision has been made for all Fixed Charges and other expenses (including depreciation) but before deduction of any taxes on profits.

K.     **Normal**

The condition that would have existed had no Damage and Time Element Loss occurred.

L.     **Rate of Gross Profit**

The Rate of Gross Profit earned on the Sales during the twelve (12) full calendar months immediately before the date of the Damage.

M.     **Raw Stock**

Material in the state in which the Insured receives it for conversion by the Insured into Stock in Progress or Finished Stock.

N.     **Sales**

The money paid or payable to the Insured for goods sold and delivered and for services rendered in the ordinary and usual conduct of the business at Insured Premises.

O.     **Standard Sales**

The Sales during that period in the number of months immediately before the date of the Damage to the Insured Property which corresponds with the Indemnity Period.

IV.    **Certain Peril Definitions**

A.     **Boiler and Machinery**

Damage involving an Accident to an Object, as those terms are defined below.

The terms used herein apply only to Boiler and Machinery and expressly limit the scope of that insurance. The terms do not define or otherwise limit perils or coverage for any Insured Property other than an Object.

1.     **Accident**

(a)    A sudden and accidental Occurrence within boilers or fired or unfired vessels owned by, operated by, or under the control of the Insured and subject to pressure or vacuum including piping or apparatus attached to and forming a part thereof, except that the words "sudden and accidental Occurrence" shall not include explosion, other than explosion of gas turbines or of the parts of a steam boiler containing steam or water, steam piping, steam turbines, or steam engines;

    (b)    Mechanical breakdown of any machine or apparatus arising out of any condition or Occurrence within such machine or apparatus; or

    (c)    Electrical injury or disturbance to electrical appliances, devices, fixtures, wiring, or other electrical or electronic equipment caused by electrical currents artificially generated.

2.    **Object**

Any boiler, fired or unfired vessel subject to pressure or vacuum including piping or apparatus attached thereto and forming a part thereof, and any mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power.

Object shall not include any electrical apparatus forming a part of the electrical connection between the secondary terminal of any arc or induction furnace transformer and the furnace which it supplies nor shall it include any electrical equipment forming a part of the furnace.

3.    **Ammonia Damage**

The loss to Insured Property, including salvage expense, with respect to Damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration, as a result of any one Accident to one Object or, as appropriate, to more than one Object.

4.    **Expediting Expenses**

The reasonable extra cost of temporary repair and of expediting the repair of the Object, including overtime and express freight or other rapid means of transportation when an Accident causes Damage to that Insured Object.

5.    **Substance Declared Hazardous**

The additional expense incurred for cleanup, repair or replacement, or disposal of Insured Property which, as the direct result of an Accident to an Object, has been damaged, contaminated or polluted by a Pollutant(s) and/or Hazardous Material declared hazardous by an authorized governmental agency.

6.    **Spoilage**

Damage to Insured Property directly caused by change in temperature or humidity resulting from an Accident to an Object that first causes Damage to an apparatus for refrigeration, cooling, humidifying, dehumidifying, air conditioning, heating, generating or converting power.

7.    **Water Damage**

Damage (including any salvage expense) by water to air conditioning and refrigeration systems and water piping used for humidifying, cooling or space heating purposes directly resulting from an Accident to an Object.

B.    **Earth Movement**

Earthquake, landslide, subsidence, volcanic eruption or any other Earth Movement (all whether or not naturally occurring), but not including mud slide, mud flow or Sinkhole. For purposes of all limits

and deductibles in this contract, Earth Movement includes all release or escape of water from sprinklers or other systems arising from or relating to the Occurrence.

C.    **Flood**

A temporary condition of partial or complete inundation of normally dry land areas from any of the following:

1.    The overflow of inland or tidal waters;

2.    The unusual and rapid accumulation or runoff of surface waters from any source;

3.    Mud slide or mud flow caused by accumulation of water on or under the ground;

4.    Wave action, force of water (whether wind driven or not), storm surge, Named Storm, tsunami or the release of impounded water;

5.    The failure, overtopping, or breach of any structure designed to hold any body of water, river or stream.

If Named Storm or Earth Movement are excluded by this Policy, then Flood caused by any of the above items that is associated with or related in any way to Named Storm or Earth Movement, respectively, is excluded.

D.    **Named Storm**

Named Storm is defined as a weather or atmospheric condition that has been declared as a hurricane, typhoon, tropical storm or cyclone by the U.S. National Weather Service, World Meteorological Organization, Australia Bureau of Meteorology, Philippine Atmospheric, Geophysical and Astronomical Services Administration, the Seychelles Meteorological Service or a similar weather organization.

Damage directly caused by or resulting from a Named Storm shall, for all purposes, include but not be limited to any associated physical force (to the extent insured under this policy) whether described as wind, hail, lightning, tornado, rain or water (whether driven by wind or not), Flood, tidal wave, wind driven objects or debris.

E.    **Sinkhole**

The sudden sinking or collapse of the land into underground empty spaces created by the action of water on limestone or other underlying rock formations.

F.    **Specified Perils**

Fire; lightning; explosion; Windstorm; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; Sinkhole; volcanic action; falling objects; or weight of snow, ice or sleet.

G.    **Terrorism**

Terrorist acts, including but not limited to the intentional conduct by any person(s) or group(s) threatening or causing Damage or Contingent Damage in order to induce fear, submission, or otherwise influence people or government(s), or to promote, publicize or advance any ideological, religious, social or political cause.

H.   **Windstorm**

The direct action of wind, or the direct action of hail (regardless of whether hail is accompanied by wind), but any such direct action does not include:

1.   Damage caused directly or indirectly by ice (other than hail), snow, sleet or dust, whether driven by wind or not;

2.   Damage to the interior of any building or structure, or the Insured Property inside the building or structure, caused directly or indirectly by rain, snow, sleet, sand or dust, whether driven by wind or not, unless Windstorm first damages the exterior of the building or structure and exposes it to further damage from the elements; or

3.   Damage resulting when the weight of snow, rainwater, ice or sleet is a contributing factor to the fall or collapse of a building or structure or any part thereof.

V.   **Certain Zone Definitions**

A.   **High Hazard Earth Movement Zones**

| State/Country | Counties / Areas |
|---|---|
| Alaska | Entire State |
| California | Entire State |
| Hawaii | Entire State |

B.   **New Madrid Seismic Zone**

| State | Counties |
|---|---|
| Arkansas | Arkansas, Ashley, Chicot, Clay, Craighead, Crittenden, Cross, Desha, Drew, Fulton, Grant, Greene, Independence, Izard, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Pulaski, Randolph, Saline, Sharp, St Francis, White, Woodruff |
| Illinois | Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Morgan, Perry, Pike, Pope, Pulaski, Randolph, Richland, Saint Clair, Saline, Sangamon, Scott, Shelby, Union, Wabash, Washington, Wayne, White, Williamson |
| Indiana | Crawford, Daviess, Dubois, Gibson, Greene, Knox, Lawrence, Martin, Orange, Perry, Pike, Posey, Spencer, Sullivan, Union, Vanderburgh, Warrick |
| Kentucky | Ballard, Breckenridge, Butler, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Logan, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Simpson, Todd, Trigg, Union, Warren, Webster |

| State | Counties |
|---|---|
| Mississippi | Alcorn, Benton, Bolivar, Calhoun, Carroll, Chickasaw, Choctaw, Clay, Coahoma, De Soto, Grenada, Holmes, Humphreys, Issaquena, Itawamba, Lafayette, Lee, Leflore, Lowndes, Marshall, Monroe, Montgomery, Oktibbeha, Panola, Pontotoc, Prentiss, Quitman, Sharkey, Sunflower, Tallahatchie, Tate, Tippah, Tishomingo, Tunica, Union, Warren, Washington, Webster, Yalobusha, Yazoo |
| Missouri | Audrain, Bollinger, Butler, Callaway, Cape Girardeau, Carter, Cole, Crawford, Dent, Dunklin, Franklin, Gasconade, Howell, Iron, Jefferson, Lincoln, Madison, Maries, Marion, Miller, Mississippi, Montgomery, New Madrid, Oregon, Osage, Pemiscot, Perry, Phelps, Pike, Pulaski, Ralls, Reynolds, Ripley, St. Charles, St. Francois, Ste. Genevieve, St. Louis, St. Louis City, Scott, Shannon, Stoddard, Texas, Warren Washington, Wayne |
| Tennessee | Benton, Carroll, Cheatham, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Lawrence, Lewis, Madison, McNairy, Montgomery, Obion, Perry, Robertson, Shelby, Smith, Stewart, Tipton, Wayne, Weakley |

C.  **Pacific Northwest Seismic Zone**

   The states of Oregon and Washington

D.  **High Hazard Flood Zones**

   1.  **Within the United States of America:** All Locations within a 100-year floodplain or a Special Flood Hazard Area as designated on a Flood Insurance Rate Map by the Federal Emergency Management Agency. Special Flood Hazard Areas shall mean the areas of a flood insurance rate map identified as zones A, AO, AH, A1-A30, AE, A99, AR, AR/A, AR/AE, AR/A1-A30, AR/AH, AR/AO, V, V1-V30, and VE.

E.  **High Hazard Wind Zones**

| State/Country | Counties / Areas |
|---|---|
| Alabama | Baldwin, Mobile |
| Florida | Entire State |
| Georgia | Brantley, Bryan, Camden, Chatham, Charlton, Effingham, Glynn, Liberty, Long, McIntosh, Pierce, Wayne |
| Hawaii | Entire State |
| Louisiana | Parishes of: Acadia, Ascension, Assumption, Cameron, Calcasieu, East Baton Rouge, East Feliciana, Iberia, Iberville, Jefferson, Jefferson Davis, Lafayette, Lafourche, Livingston, Orleans, Plaquemines, Pointe Coupee, St. Bernard, St. Charles, St. James, St. John the Baptist, Saint Helena, St. Martin, St. Mary, St. Tammany, Tangipahoa, Terrebonne, Vermilion, Washington, West Baton Rouge, West Feliciana |

| State/Country | Counties / Areas |
|---|---|
| Mississippi | George, Hancock, Harrison, Jackson, Pearl River, Stone |
| North Carolina | Beaufort, Bertie, Bladen, Brunswick, Camden, Carteret, Chowan, Columbus, Craven, Currituck, Dare, Duplin, Gates, Greene, Hertford, Hyde, Jones, Lenoir, Martin, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Pitt, Tyrrell, Wake, Washington, Wayne |
| South Carolina | Beaufort, Berkeley, Charleston, Colleton, Dorchester, Georgetown, Hampton, Horry, Jasper, Williamsburg |
| Texas | Aransas, Bee, Brazoria, Brooks Calhoun, Cameron, Chambers, Fort Bend, Galveston, Goliad, Hardin, Harris, Hidalgo, Jackson, Jasper, Jefferson, Jim Wells, Kenedy, Kleberg, Liberty, Live Oak, Matagorda, Newton, Nueces, Orange, Refugio, San Patricio, Victoria, Wharton, Willacy |

F.   **Moderate Hazard Wind Zones**

| State/Country | Counties / Areas |
|---|---|
| Connecticut | Fairfield, Middlesex, New Haven, New London |
| Delaware | Sussex |
| Maine | Androscoggin, Cumberland, Hancock, Knox, Lincoln, Sagadahoc, Waldo, Washington, York |
| Maryland | Calvert, Charles, Dorchester, St. Mary's, Somerset, Wicomico, Worcester |
| Massachusetts | Barnstable, Bristol, Dukes, Nantucket, Norfolk, Plymouth, Suffolk |
| New Hampshire | Rockingham, Strafford |
| New Jersey | Atlantic, Bergen Cape May, Cumberland, Essex, Hudson, Middlesex, Monmouth, Ocean, Union |
| New York | Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk, Westchester |
| Rhode Island | Bristol, Kent, Newport, Providence and Washington, Block Island |
| Virginia | Accomack, Charles City, Gloucester, Isle of Wight, James City, Lancaster, Mathews, Middlesex, New Kent, Northampton, Northumberland, Surry, and York, and the independent cities of Chesapeake, Hampton, Newport News, Norfolk, Poquoson, Portsmouth, Prince George, Suffolk, Sussex, Virginia Beach, Williamsburg |
| West Virginia | Wayne |

**Endorsement No. 1**

Effective Date: April 12, 2010

## Certified Act(s) of Terrorism Endorsement

In consideration of an additional premium detailed below, with respect to insured locations in the United States, its territories and possessions and Puerto Rico, this policy is extended to insure Certified Act(s) of Terrorism. All other terms, conditions and exclusions of this policy including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this policy.

Notwithstanding anything to the contrary in this policy or any of its endorsements, there is no coverage provided for any costs or expenses associated with coverage provisions for sue and labor or protection and preservation of property, including but not limited to costs or expenses incurred for actions to defend, safeguard, preserve, protect or recover any covered property against actual, imminent or suspected terrorism.

Any loss or damage and resulting business interruption for which the Company is not responsible under the terms of the Terrorism Risk Insurance Act (all hereinafter,"TRIA"), are not insured under any circumstance by this coverage extension regardless whether caused by or resulting from an insured peril.

**Disclosure of Federal Participation in Payment of Terrorism Loss**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the Company's applicable retention. However, if aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Disclosure of Cap on Company Participation in Payment of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under TRIA exceed $100 billion in a calendar year and the Company has met its deductible under TRIA, the Company shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Disclosure of Premium for Certified Act(s) of Terrorism Coverage**

The premium charged for Certified Act(s) of Terrorism is $20,116 and does not include any charges for the portion of loss covered by the U.S. Federal Government as set forth in the federal Terrorism Risk Insurance Program (hereinafter the "Program") established by TRIA.

**Definitions**

Wherever used in this policy or its endorsements a Certified Act of Terrorism means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to TRIA.

**Termination**

In the event the Program established by TRIA terminates prior to the expiration of this policy, coverage provided under this endorsement for "Certified Act(s) of Terrorism" shall cease simultaneously.

**Sublimit**

The Company's liability for Certified Act(s) of Terrorism shall not exceed:

15% or $150,000,000 part of $1,000,000,000 excess of the program Deductibles, per occurrence for all loss or damage covered by this policy caused directly by or resulting from a Certified Act of Terrorism, including any loss or damage covered by this policy or its endorsements (by fire or otherwise) which ensues from a Certified Act of Terrorism. This sublimit applies even if another peril not otherwise excluded contributes concurrently or in any other sequence to the loss or damage. This sublimit is a part of and not in addition to the policy limit.

Endorsement No. 2

**Effective Date**: April 12, 2010

**Participation Endorsement**

This policy insures for thirty percent (15%) interest in layer $1,000,000,000 per occurrence excess of the per occurrence Deductible.  In the event of loss or damage insured by this policy, this Insurer shall be liable for fifteen percent (15%) of $1,000,000,000 per occurrence excess of the per occurrence Deductible, subject to the ground up sublimits of Liability set forth in Section G. Sublimits of the Commercial Property Insurance Declarations, except;

- In the event of loss or damage insured by this policy caused by Flood, this Insurer shall be liable for fifteen percent (15%) of the layer $25,000,000 per occurrence and in the aggregate annually excess of the per occurrence Deductible; and

- In the event of loss or damage insured by this policy caused by Earth Movement, this Insurer shall be liable for fifteen percent (15%) of the layer $25,000,000 per occurrence and in the aggregate annually excess of the per occurrence Deductible.

All other terms, conditions and limitations of the Policy remain unaltered.

Wayne County Airport Authority

Endorsement No. 3

**Effective Date**: April 12, 2010

**Joint Loss Agreement**

In the event that this policy is a boiler and machinery insurance policy or an all risk or named peril property insurance policy or a difference in conditions policy which cover the same property or cover the same location(s) at which a loss occurs, it is agreed that:

If there is a disagreement between the companies under this policy and such other policies either as to:

(1)  whether such damage or destruction is insured against by the all risk or named peril property insurance policy, by the difference in condition policy, or by such boiler and machinery insurance policy, or

(2)  the extent of participation of this policy and such other policies in a loss which is insured against, partially or wholly, by any one or all of said policies;

this Company shall, upon written request of the Insured, pay to the Insured its proportional share of the loss which is in disagreement, being one-third if three policies are involved in the disagreement or one-half if two policies are involved in the disagreement, but in no event more than this Company would have paid if the other two said policies had not been in effect, subject to the following conditions:

(1)  the amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and the Insures, is limited to the minimum amount remaining payable under  this policy and such other policy(ies);

(2)  the Companies underwriting each policy in disagreement shall simultaneously pay to the Insured their proportional share of said amount which is in disagreement;

(3)  the payments by the insurers hereunder and acceptance of the same by the Insured signify the agreement of the insurers to submit to and proceed with arbitration within ninety days of such payments.

One arbitrator shall be appointed by each company whose, and one additional arbitrator shall be appointed by consent of the others.  The decision by the arbitrators shall be binding on the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

(4)  the Insured agrees to cooperate in connection with such arbitration, but not to intervene therein;

(5)  the provisions shall not apply unless each of the said policies in disagreement are similarly endorsed;

(6)  acceptance by the Insured of sums paid pursuant to the provisions, including an arbitration award, shall not operate to alter, waive, surrender or in any way affect the rights of the Insured against any of the insurers.

All other terms, conditions and limitations of the Policy remain unaltered.

Wayne County Airport Authority

Endorsement No. 4

**Effective Date**: April 12, 2010

**Additional Named Insured Endorsement**

It is understood and agreed that Metro Energy LLC is hereby added as an Additional Insured for the McNamara Energy Center, Power Plant Building 821, as their interest may appear, per written contract agreement:

Metro Energy, LLC
C/O DTE Energy Services, Inc.
414 S. Main St., Suite 600
Ann Arbor, MI  48104

All other terms, conditions and limitations of the Policy remain unaltered.

Endorsement No. 5

**Effective Date**: April 12, 2010

**Mid Term Premium Adjustment Clause**

The annual premium for this policy is based on rates in effect at the time that this policy is issued.  The annual premium for this policy is based on the 100% values reported by the Insured as of the inception date of this policy and as of each subsequent anniversary date.

It is understood and agreed that there shall be no premium adjustment during the term of this policy for additions or deletions of locations unless the insured value of such additions or deletions (for acquisitions and divestitures) exceeds $20,000,000.

All other terms, conditions and limitations of the Policy remain unaltered.

Wayne County Airport Authority



Allianz (Ⅲ)
Global Risks

| | | |
|---|---|---|
| **Policy No.:** | CLP 3011353 | **Endorsement No.** |
| **Effective Date:** | April 12, 2010 | **6** |

## STANDARD FIRE POLICY PROVISIONS ENDORSEMENT

This policy is amended by the following conditions but only if such conditions are construed to be more liberal than those already stated in the policy relating to the perils of fire, lightning or removal:

IN CONSIDERATION OF THE PROVISIONS AND STIPULATIONS HEREIN OR ADDED HERETO, AND OF THE PREMIUM SPECIFIED in the Declarations or in endorsements made a part hereof, this Company, for the term of years specified in the Declarations from the inception date shown in the Declarations at 12:01 A.M. (Standard Time) to the expiration date shown in the Declarations at 12:01 A.M. (Standard Time) at location of property involved, to an amount not exceeding the limit of liability specified in the Declarations, does insure the Insured named in the Declarations and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from the interruption of business or manufacture, nor in any event for more than the interest of the Insured, against all DIRECT LOSS BY FIRE, LIGHTNING AND OTHER PERILS INSURED AGAINST IN THIS POLICY INCLUDING REMOVAL FROM PREMISES ENDANGERED BY THE PERILS INSURED AGAINST IN THIS POLICY, EXCEPT AS HEREINAFTER PROVIDED, to the property described in the Declarations while located or contained as described in this policy, or pro rata for five days at each proper place to which any of the property shall necessarily be removed for preservation from the perils insured against in this policy, but not elsewhere.

Assignment of this policy shall not be valid except with the written consent of this Company.

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provision, stipulations and agreements as may be added hereto, as provided in this policy.

| | | |
|---|---|---|
| 1 | **Concealment,** | This entire policy shall be void if, whether |
| 2 | **fraud.** | before or after a loss, the insured has wil- |
| 3 | | fully concealed or misrepresented any ma- |
| 4 | terial fact or circumstance concerning this insurance of the | |
| 5 | subject thereof, or the interest of the insured therein, or in case | |
| 6 | of any fraud or false swearing by the insured relating thereto. | |
| 7 | **Uninsurable** | This policy shall not cover accounts, bills, |
| 8 | **and** | currency, deeds, evidences of debt, money or |
| 9 | **excepted property.** | securities; nor, unless specifically named |
| 10 | | hereon in writing, bullion or manuscripts. |
| 11 | **Perils not** | This Company shall not be liable for loss by |
| 12 | **included.** | fire or other perils insured against in this |
| 13 | | policy caused, directly or indirectly, by: (a) |
| 14 | enemy attack by armed forces, including action taken by mili- | |
| 15 | tary, naval or air forces in resisting an actual or an immediately | |
| 16 | impending enemy attack; (b) invasion; (c) insurrection; (d) | |
| 17 | rebellion; (e) revolution; (f) civil war; (g) usurped power; (h) | |
| 18 | order of any civil authority except acts of destruction at the time | |
| 19 | of and for the purpose of preventing the spread of fire, provided | |
| 20 | that such fire did not originate from any perils excluded | |
| 21 | by this policy; (i) neglect of the insured to use all reasonable | |

**Allianz** (ⁱⁱ)
Global Risks

Policy No. CLP 3011353 | Endorsement No. 6
STANDARD FIRE POLICY PROVISIONS ENDORSEMENT

| | |
|---|---|
| 22 | means to save and preserve the property at and after a loss, or |
| 23 | when the property is endangered by fire in neighboring prem- |
| 24 | ises; (j) nor shall this Company be liable for loss by theft. |
| 25 | **Other insurance.**        Other insurance may be prohibited or the |
| 26 | amount of insurance may be limited by en- |
| 27 | dorsement attached hereto. |
| 28 | **Conditions suspending or restricting insurance. Unless other-** |
| 29 | **wise provided in writing added hereto this Company shall not** |
| 30 | **be liable for loss occurring** |
| 31 | (a) while the hazard is increased by any means within the con- |
| 32 | trol or knowledge of the insured; or |
| 33 | (b) while a described building, whether intended for occupancy |
| 34 | by owner or tenant, is vacant or unoccupied beyond a period of |
| 35 | sixty consecutive days; or |
| 36 | (c) as a result of explosion or riot, unless fire ensues, and in |
| 37 | that event for loss by fire only. |
| 38 | **Other perils**        Any other peril to be insured against or sub- |
| 39 | **or subjects.**        ject of insurance to be covered in this policy |
| 40 |        shall be by endorsement in writing hereon or |
| 41 | added hereto. |
| 42 | **Added provisions.**        The extent of the application of insurance |
| 43 |        under this policy and of the contribution to |
| 44 | be made by this Company in case of loss, and any other pro- |
| 45 | vision or agreement not inconsistent with the provisions of this |
| 46 | policy, may be provided for in writing added hereto, but no pro- |
| 47 | vision may be waived except such as by the terms of this policy |
| 48 | is subject to change. |
| 49 | **Waiver**        No permission affecting this insurance shall |
| 50 | **provisions.**        exist or waiver of any provision be valid, |
| 51 |        unless granted herein or expressed in writing |
| 52 | added hereto.  No provision, stipulation or forfeiture shall be |
| 53 | held to be waived by any requirement or proceeding on the part |
| 54 | of this Company relating to appraisal or to any examination |
| 55 | provided for herein. |
| 56 | **Cancellation**        This policy shall be cancelled at any time |
| 57 | **of policy.**        at the request of the insured, in which case |
| 58 |        this Company shall, upon demand and sur- |
| 59 | render of this policy, refund the excess of paid premium above |
| 60 | the customary short rates for the expired time.  This pol- |
| 61 | icy may be cancelled at any time by this Company by giving |
| 62 | to the insured a five day's written notice of cancellation with |
| 63 | or without tender of the excess of paid premium above the pro |
| 64 | rata premium for the expired time, which excess, if not ten- |
| 65 | dered, shall be refunded on demand.  Notice of cancellation shall |
| 66 | state that said excess premium (if not tendered) will be re- |
| 67 | funded on demand. |
| 68 | **Mortgagee**        If loss hereunder is made payable, in whole |
| 69 | **interests and**        or in part, to a designated mortgagee not |
| 70 | **obligations.**        named herein as the insured, such interest in |
| 71 |        this policy may be cancelled by giving to such |
| 72 |        mortgagee a ten day's written notice of can- |
| 73 |        cellation. |
| 74 | If the insured fails to render proof of loss, such mortgagee, upon |

AGR-CP 4005 (11-07)                                                                                                   Page 2 of 5



Allianz
Global Risks

Policy No. CLP 3011353 | Endorsement No. 6
STANDARD FIRE POLICY PROVISIONS ENDORSEMENT

75  notice, shall render proof of loss in the form herein specified
76  within sixty (60) days thereafter and shall be subject to the pro-
77  visions hereof relating to appraisal and time of payment and of
78  bringing suit.  If this Company shall claim that no liability ex-
79  isted as to the Mortgagor or owner, it shall, to the extent of pay-
80  ment of loss to the mortgagee, be subrogated to all the mort-
81  gagee's rights of recovery, but without impairing mortgagee's
82  right to sue; or it may pay off the mortgage debt and require
83  an assignment thereof and of the mortgage.  Other provisions
84  relating to the interests and obligations of such mortgagee may
85  be added hereto by agreement in writing.
86  **Pro rata liability**.          This Company shall not be liable for a greater
87                                    proportion of any loss than the amount
88  hereby insured shall bear to the whole insurance covering the
89  property against the peril involved, whether collectible or not.
90  **Requirements in**          The insured shall give immediate written
91  **case loss occurs**.         notice to this Company of any loss, protect
92                                 the property from further damage, forthwith
93  separate the damaged and undamaged personal property, put
94  it in the best possible order, furnish a complete inventory of
95  the destroyed, damaged and undamaged property, showing in
96  detail quantities, costs, actual cash value and amount of loss
97  claimed; **and within sixty days after the loss, unless such time**
98  **is extended in writing by the Company, the insured shall render**
99  **to this Company a proof of loss**, signed and sworn to by the
100 insured, stating the knowledge and belief of the insured as to
101 the following:  the time and origin of the loss, the interest of the insured
102 and of all others in the property, the actual cash value of
103 each item thereof and the amount of loss thereto, all encum-
104 brances thereon, all other contracts of insurance, whether valid
105 or not, covering any said property, any changes in the title,
106 use occupation, location, possession or exposures of said prop-
107 erty since the issuing of this policy, by whom and for what
108 purpose any building herein described and the several parts
109 thereof were occupied at the time of loss and whether or not it
110 then stood on leased ground, and shall furnish a copy of all the
111 descriptions and schedules in all policies and, if required, verified
112 plans and specifications of any building, fixtures or machinery
113 destroyed or damaged.  The insured, as often as may be reason-
114 ably required, shall exhibit to any person designated by this
115 Company all that remains of any property herein described, and
116 submit to examinations under oath by any person named by this
117 Company, and subscribe the same; and, as often may be
118 reasonably required, shall produce for examination all books of
119 account, bills, invoices and other vouchers, or certified copies
120 thereof if originals be lost, at such reasonable time and place as
121 may be designated by this Company or its representative, and
122 shall permit extracts and copies thereof to be made.
123 **Appraisal**.                In case the insured and this Company shall
124                              fail to agree as to the actual cash value or
125 the amount of loss, then, on the written demand of either, each
126 shall select a competent and disinterested appraiser and notify
127 the other of the appraiser selected within twenty days of such


Allianz
Global Risks

**Policy No. CLP 3011353 | Endorsement No. 6**
STANDARD FIRE POLICY PROVISIONS ENDORSEMENT

128 demand.  The appraisers shall first select a competent and dis-
129 interested umpire; and failing for fifteen days to agree upon
130 such umpire, then, on request of the insured or this Company,
131 such umpire shall be selected by a judge of a court of record in
132 the state in which the property covered is located.  The ap-
133 praisers shall then appraise the loss, stating separately actual
134 cash value and loss to each item; and, failing to agree, shall
135 submit their differences, only, to the umpire.  An award in writ-
136 ing, so itemized, of any two when filed with this Company shall
137 determine the amount of actual cash value and loss.  Each
138 appraiser shall be paid by the party selecting him and the ex-
139 penses of appraisal and umpire shall be paid by the parties
140 equally.
141 **Company's**       It shall be optional with this Company to
142 **options.**        take all, or any part of the property at the
143                  agreed or appraised value, and also to re-
144 pair, rebuild or replace the property destroyed or damaged with
145 other of like kind and quality within a reasonable time, on giv-
146 ing notice of its intention so to do within thirty days after the
147 receipt of the proof of loss herein required.
148 Abandonment.  There can be no abandonment to this Com-
149                  pany of any property.
150 **When loss**      The amount of loss for which this Company
151 **payable.**        may be liable shall be payable sixty days
152                  after proof of loss, as herein provided, is
153 received by this Company and ascertainment of the loss is made
154 either by agreement between the insured and this Company ex-
155 pressed in writing or by the filing with Company of an
156 award as herein provided.
157 **Suit.**          No suit or action on this policy for the recov-
158                  ery of any claim shall be sustainable in any
159 court of law or equity unless all the requirements of this policy
160 shall have been complied with, and unless commenced within
161 twelve months next after inception of the loss.
162 **Subrogation.**   This Company may require from the insured
163                  an assignment of all right of recovery against
164 any party for loss to the extent that payment therefor is made
165 by this Company.

**STATE EXCEPTIONS - NUMBERED LINE CONDITIONS:**

**NO. CAROLINA, NO. DAKOTA:** The words "twelve months" in line 161 are changed to "three years".
This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration
dates specified in the Declarations.

**IDAHO:** The words "five days'" in line 62 are changed to "thirty days"

**VIRGINIA:** The words "twelve months" in line 161 are changed to "two years".

**WISCONSIN:** The words "five days'" in line 62 are changed to "ten days'".

**MAINE:** The words "five days" in line 62 are changed to "ten days".  The words twelve months" in line 161
are changed to "two years."



**Allianz (iii)**
Global Risks

**Policy No. CLP 3011353 | Endorsement No. 6**
**STANDARD FIRE POLICY PROVISIONS ENDORSEMENT**

**NEW YORK:** The words "twelve months" in line 161 are changed to "twenty-four months".  This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration dates specified in the Declarations.

**ARIZONA, CONNECTICUT, HAWAII. IOWA, MISSOURI, NEBRASKA, NEW HAMPSHIRE, OKLAHOMA, PENNSYLVANIA:** This policy shall be effective and shall terminate at noon (Standard Time) on the inception and expiration dates specified in the Declarations.

Where the terms "policy", "location" or "company" in this endorsement are defined in the policy to which it is attached, these terms assume those same definitions.

All other terms and conditions remain unchanged.



Allianz (ⅱ)
Global Risks

Policy Number:     CLP 3011353                                      Endorsement Number
Effective Date:     April 12, 2010                                                  7

## ELECTRONIC DATA LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

XL INSURANCE COMMERICAL PROPERTY COVERAGE FORM

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

**Words that appear in quotation marks in this endorsement have special meaning. Refer to Section C - DEFINITION.**

A.   Notwithstanding any other provision, this policy, including its endorsements, does not cover:

1.   Loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" from any cause whatsoever except for losses directly caused by any of the following causes:

fire, lightning, explosion, windstorm, hail, aircraft or vehicle impact, riot, civil commotion, smoke, or, leakage or automatic discharge from fire protection systems, all occurring during the policy period to property insured by this policy.

2.   Any time element loss, including, but not limited to, interruption of business, extra expense, rental value, royalties, expediting expense and leasehold interest, resulting from any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to, or breakdown of "electronic data" excluded by paragraph 1. above.

This policy will not pay the cost of any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by or for any Insured to determine, rectify, or test for any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by paragraph 1. above.

In addition, this policy will not pay for the repair, replacement or modification of any computer hardware, including microprocessors, firewalls, routers, or hubs, computer application software, computer operating systems and related software, or computer networks and related hardware and software to correct any deficiencies, change any features, or otherwise prevent the occurrence of any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to or breakdown of "electronic data" excluded by paragraph 1. above.

Nevertheless, if fire or explosion is not excluded from this policy and a fire or explosion results directly or indirectly from any loss, damage, corruption, destruction, distortion, interruption, disruption, erasure, deletion, alteration, loss of use, reduction in functionality, loss of access to, denial of access to, or breakdown of "electronic data" excluded by paragraph 1. above, any loss or damage reinsured arising directly from that fire or explosion shall (subject to the terms, exclusions, limits and conditions of this policy) be covered.

B.   Electronic Data Processing Media Valuation

Notwithstanding any provision to the contrary within this policy or its endorsements, in the event of direct physical loss or damage to electronic data processing "media" insured by this policy, the basis of valuation shall be, if such items are actually reproduced, the cost of blank "media" plus the costs of copying the "electronic data" from back ups or from originals of a previous generation, but no liability is assumed for any other cost, including research, engineering, programming, or assembling or gathering information, incurred in restoring or recreating data or programs lost, nor any liability inconsistent with the terms of this endorsement.



C.  DEFINITIONS

1.  "Electronic Data"

The term "electronic data" shall mean electronic data of any kind including, but not limited to, facts, concepts, data, or other information in a form useable by computers or other electronic or electromagnetic data processing equipment, including computer software and all other coded instructions for the processing or manipulation of data on such equipment.

2.  "Media"

The term "media" shall mean the materials upon which data is recorded, including but not limited to, paper tapes, cards, electronic memory circuits, and magnetic or optical storage devices.

**Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.**


**Allianz**
Global Risks

| Policy No.: | CLP 3011353 | Endorsement No. |
|---|---|---|
| Effective Date: | April 12, 2010 | 8 |

## FUNGI EXCLUSION ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.**

Words that appear in quotation marks in this endorsement have special meaning. Refer to Section B - DEFINITION.

A.    EXCLUSION

Notwithstanding any other provision, this policy, including its endorsements, does not cover:

1.    Any cost or expense incurred to clean up, remove or remediate any "fungi"; or

2.    Any cost or expense incurred to test for, monitor, or assess the existence, concentration or effects of "fungi".

B.    DEFINITION

"Fungi"

The term "fungi" shall mean any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut, mushroom, spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this endorsement is attached other than as above stated.


Allianz (ⅲ)
Global Risks

Policy Number:   CLP 3011353
Effective Date:    April 12, 2010

Endorsement Number
9

## TERRORISM ENDORSEMENT: CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

    XL INSURANCE COMMERCIAL PROPERTY COVERAGE FORM

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**This endorsement contains words or phrases that have specific Definitions. Refer to Items A. and B. below for details of these Definitions.**

In consideration of the premium charged, and subject to the terms, exclusions, limits and conditions of the policy to which this endorsement is attached and to the provisions contained within this endorsement, this policy insures against direct physical loss or damage caused directly or indirectly by or resulting from a Certified Act of Terrorism.

Notwithstanding anything contained elsewhere in this policy or any of its endorsements, any exclusion or limitation of terrorism is hereby amended to the effect that such exclusion or limitation does not apply to a Certified Act of Terrorism as defined herein.

A.    **Definitions**

    The following definitions are added with respect to the provisions of this endorsement to the policy:

    1.    The Act

        The Act means the federal Terrorism Risk Insurance Act of 2002 as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

    2.    Certified Act of Terrorism

        Certified Act of Terrorism means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to The Act. The criteria contained in The Act for a Certified Act of Terrorism include the following:

        a.    The act resulted in aggregate property and casualty insurance losses in excess of $5,000,000; and

        b.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.


Allianz
Global Risks

Policy Number CLP 3011353 | Endorsement Number 9
TERRORISM ENDORSEMENT: CERTIFIED ACT OF TERRORISM

B.    **Amendment**

For purposes of this endorsement only, any definition of Occurrence stated in the policy or any of its endorsements to which this endorsement is attached, is amended as follows:

Occurrence

The term Occurrence as applied to a Certified Act of Terrorism shall mean any one loss, disaster, or casualty, or series of losses, disasters or casualties attributable directly or indirectly to one cause or to one series of similar causes. All such losses will be added together and the total amount of such losses will be treated as one Occurrence. It shall be defined as the sum total of all losses arising out of or caused by a Certified Act of Terrorism during any period of 72 consecutive hours. When filing proof of loss, the Insured shall have the right to elect the moment at which the 72 hour period shall be deemed to have commenced provided always that no elected period of 72 hours shall commence earlier than when the first loss to the insured property or interests occurs. However, the Company shall not be liable hereunder for any loss or damage:

1.    occurring before this policy becomes effective; or

2.    arising from an Occurrence which is in progress at the time this policy becomes effective, even if such loss or damage occurs after this policy becomes effective; or

3.    occurring after the expiration date of this policy, except loss or damage arising from an Occurrence in progress at the time this policy expires.

C.    **Application of Other Exclusions**

All other limitations and exclusions as provided elsewhere in this policy or any of its endorsements are in full force and effect.

D.    **Disclosure**

The following disclosure is added to the policy:

COVERAGE IS PROVIDED BY THIS ENDORSEMENT FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, THIS POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT  COVERAGE UNDER THIS POLICY, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, COVERAGE UNDER THIS POLICY MAY BE REDUCED.



**Allianz Global Risks**

Policy Number CLP 3011353 | Endorsement Number 9
**TERRORISM ENDORSEMENT: CERTIFIED ACT OF TERRORISM**

E.     **Sublimit**

Irrespective of the number of locations involved, the Company shall not be liable under this endorsement for more than the following sublimit for all loss or damage covered by this policy caused directly or indirectly by or resulting from a Certified Act of Terrorism during any one Occurrence, including any loss or damage covered by this policy or its endorsements (by fire or otherwise) which ensues from a Certified Act of Terrorism. This limitation applies even if another peril not otherwise excluded contributes concurrently or in any sequence to the loss or damage. Notwithstanding anything to the contrary in the policy including its endorsements to which this endorsement is attached, this sublimit is reflective of the Company's share and may not represent the 100% program sublimit.

Sublimit:

$150,000,000 (being 15%) part of $1,000,000,000 per Occurrence in Excess of <u>Deductibles</u>

The sublimit is part of and not in addition to the policy limit.  The sublimit does not increase the policy limit of any other sublimit.

If the sublimit above is noted as an annual aggregate, such sublimit applies in the aggregate to all losses occurring during the policy period.  If the policy period is greater than twelve (12) months, then the sublimit applies in the aggregate to all losses occurring during each twelve (12) month period, beginning on the policy inception date, and each subsequent anniversary date.

F.     **Premium**

The following is included in the premium referenced on the COMMON POLICY DECLARATIONS of this policy:

| Coverage | Premium |
|---|---|
| Certified Act of Terrorism Coverage | $20,116 |

Where the terms "policy" or "Company" in this endorsement are defined in the policy to which this endorsement is attached, those terms herein assume those same definition(s).

All other terms and conditions remain unchanged.



**Allianz** (Ⓤ)
Global Risks

**Policy Number:** CLP 3011353
**Effective Date:** April 12, 2010

**Endorsement Number**
**10**

## GENERAL CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**XL INSURANCE COMMERCIAL PROPERTY COVERAGE FORM**

It is agreed that the following amendments are made to the XL Insurance Commercial Property Coverage Form #PROP 20-D (modified) for Wayne County Airport Authority.

1. **Clause C. Territory**

   Anywhere within the United States Virgin Islands, Puerto Rico and the fifty (50) states of the United States of America and the District of Columbia.

2. **Clause E. Premium** is amended as follows:

   The annual premium of $160,037 is payable at policy inception and is inclusive of any premium shown on endorsements issued at inception. Subsequent additions to Property Insured and the corresponding insured values are subject to additional premium as provided in this policy. This premium:

   1. excludes surcharges or fees (if any) as listed in **Paragraph J.** below;

   2. excludes premium shown on any endorsements attached to this policy after inception;

   3. excludes brokerage commission;

3. **Clause F. Policy Limit:**

   Company Share: 15%
   Company Capacity: $150,000,000 part of $1,000,000,000

4. **Clause G. Sublimits**

   The following sublimits are **included:**

   | | |
   |---|---|
   | Included | Consequential Reduction in Value |
   | Included | Gross Earnings - Metro Airport |
   | Included | Gross Earnings - Willow Run Airport |
   | Included | Gross Earnings - McNamara Terminal |
   | Included | Gross Earnings – North Terminal |
   | Included | Impounded Water |
   | Included | Ordinary Payroll Time Limit:  90 consecutive calendar days Excluded for the McNamara Terminal and North Terminal |
   | Included | Related Reported Values |
   | Included | Time Element Interdependency |

**AGR-IL M001 (11-03)**



Boiler and Machinery, Sublimits included:

| Included | Gross Earnings |
| Included | Extended Period of Indemnity- including in Gross Earnings |
| Included | Extra Expense included in Business Interruption |
| $ 10,000,000 | Service Interruption Property Damage and Service Interruption Time Element (Combined Sublimit) |

3.  **Declaration, Clause H. Deductible Clause and Deductible Application**

The following deductible is included:

$   50,000        Combined all coverages per "occurrence except as otherwise stated

4.  **Exclusions applicable to all Sections, Section II. Causes of Loss-Insured Control is amended to include the following exclusions**

F.    Time Element from Power Generating Equipment

G.    Brands and Labels

H.    Radioactive Contamination

I.    Tax Treatment of Profits

J.    Research and Develop

5.  **Endorsement No. 2 is amended as follows:**

Participation Endorsement

•   This policy insures for fifteen percent (15%) interest in layer $1,000,000,000 per occurrence excess of the per occurrence Deductible. In the event of loss or damage insured by this policy, this Insurer shall be liable for fifteen percent (15%) of $1,000,000,000 per occurrence excess of the per occurrence Deductible, subject to the ground-up sublimits of Liability set forth in Section G. Sublimits of the Commercial Property Insurance Declarations.

6.  **Additional Clauses Added:**

**CONFORMITY TO STATUTES**

If the provisions of this "policy" conflict with the laws of any jurisdiction in the United States and its territories and possessions where this "policy" applies, and if certain provisions are required by such laws to be stated in this "policy", then this "policy" will be read so as to eliminate such conflict and is deemed to include such provisions for Insured Location(s) within such jurisdiction.



**SALVAGE AND RECOVERIES**

When, in connection with any loss hereunder, any salvage or recovery is received subsequent to he payment of such loss, the loss shall be figured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined.  Any amounts thus found to be due either party from the other shall be paid promptly.

The expense of all proceedings necessary to such recoveries shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there should be no recovery and proceedings are conducted solely by this Company, the expense thereof shall be borne by this Company.

**NO BENEFIT TO BAILEE**

It is understood and agreed that this insurance shall not inure directly or indirectly to the benefit of any common carrier, nor without the prior affirmative consent of the Insured, to the benefit of any other Bailee, by stipulation and bill of lading or otherwise.

7.      **Additional Endorsements Added and Apply to our Participation:**

Electronic Data Limitation Endorsement

Fungi Exclusion Endorsement

Terrorism Endorsement: Certified Act of Terrorism

All other terms and conditions remain unchanged.

AGR-IL M001 (11-03)                                                          Page 3 of 3