## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WAYNE COUNTY AIRPORT
AUTHORITY,

                Plaintiff,

v.                                            Case No. 11-CV-15472
                                             Honorable Denise Page Hood

ALLIANZ GLOBAL RISKS US
INSURANCE COMPANY, *et al.*,

                Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION TO ESTOP

**I.    INTRODUCTION**

This matter involves an insurance contract. Now before the Court is Plaintiff Wayne County Airport Authority's Motion to Estop Defendant Insurers from Applying Two-Year Requirement to Replace Damaged Building. For the reasons stated below, Plaintiff's Motion to Estop is GRANTED.

**II.    STATEMENT OF FACTS**

Willow Run Airport's Hanger II is owned by the Wayne County Airport Authority (WCAA) and is located in Ypsilanti, Michigan. It is approximately 191,974 square feet. Originally, Hanger II was occupied by tenants but was later used as a cold storage facility. Hanger II is insured with four insurance companies—Lexington

Insurance Company, XL Insurance America, Allianz Global Risks US Insurance, and Federal Insurance Company (Defendant Insurers)—for a combined coverage of one billion dollars. The insurance policies are materially identical. Insurance coverage is allocated as follows: Lexington - 50 percent; XL - 25 percent; Allianz - 15 percent; and Federal Insurance - 10 percent. Each insurance policy contains the following two-year rebuild requirement:

> IV.  Physical Property Valuation
> Unless another basis of valuation is specified in this section for a type of property, the insured shall report to the Company the values of property to be insured under the policy at the current cost to replace it in full. If another basis is specified, the Insured shall report to the Company the values of the property on that basis. In the event of any Damage to Insured Property from an Insured Cause of Loss, the Insured's claim shall be valued (at the time and place of Damage) as follows:
>
> > A.  Buildings, Structures, Furniture, Fixtures, Machinery, and Equipment
> >
> > If repaired, rebuilt or replaced within two (2) years from the date of Damage, at the same or another site (within the same country), the amount of the claim shall be calculated at Replacement Cost.
> >
> > If the damaged property is not fully repaired, rebuilt, or replaced within two (2) years from the date of Damage, the amount of the claim shall not exceed the Actual Cash Value of the damaged property.
> >
> > If the damage involves any Damage to Insured Property that is obsolete or no longer useful for its intended purpose, the amount of the claim shall be limited to the Actual Cash

Value of the damaged property.

On February 11, 2011, Hanger II suffered extensive water damage. WCAA and Defendant Insurers began negotiations through Defendant Insurers' claim adjusting firm, York Risk Services Group, Inc. However, negotiations eventually fell apart when York and WCAA failed to agree on the scope of loss.

On April 25, 2011, York informed WCAA by letter of the two year rebuild requirement and that the evaluation of Hanger II showed that it was "obsolete and no longer utilized for its intended purpose." The letter further stated that "the coverage application limits [WCAA's] insurance recovery to the 'fair market value' of the property." York requested proof of loss pursuant to the policies. On May 27, 2011, York made a supplemental request identifying several exclusions that could possibly be applicable to WCAA's claim. York offered to settle Defendant Insurers' claim with WCAA for $500,000 on June 24, 2011. WCAA rejected the offer.

WCAA responded to the proof of loss request on August 22, 2011. The statement indicated the cost to repair Hanger II was $11,036,927.41, which was approximately $6 million more than the policy limit. The statement further explained that it would cost $25,600,088.00 to replace Hanger II. Because the cost to repair and replace Hanger II far exceeded the policy limits, WCAA demanded the 5 million dollar policy limit from Defendant Insurers and sought a course of action to replace

Hanger II.  On September 24, 2011, York rejected both valuations on behalf of Defendant Insurers.  On November 11, 2011, Defendant Insurers completed the investigation into WCAA's claim and informed WCAA by letter that the fair market value of the property was $401,413.92.  Included with this letter was a Subrogation Receipt, which indicated that the money was "in consideration of all claims and demands of the undersigned for loss and damage by water damage occurring on February 12, 2011, to Hanger #2 located at Willow Run Airport in Ypsilanti Township, Michigan . . . ."  Defendant Insurers submitted their share of the payments on January 5, 2012.  WCAA has not deposited the checks.

WCAA argues that it has requested a definitive statement of coverage from Defendant Insurers but has not received such a statement.  WCAA further maintains that because it is unaware of when or if it will receive funds from Defendant Insurers it has scaled down its rebuilding efforts.  WCAA submitted a request for bids in August 2012.  WCAA now asks that Court estop Defendant Insurers from enforcing the two year rebuild requirement.

### III.  ANALYSIS

#### A.  Choice of Law

As an initial matter, the parties disagree on what law should apply, Michigan or New York. The insurance policies contain the following provision:  "The Insured

4

and the Company further agree that New York law shall control the interpretation, application and meaning of this contract, whether in suit or otherwise." Defendant Insurers insist that New York law applies based on the policies' choice of law provision. WCAA takes the opposite position that Michigan law applies because risk of loss was insured in Michigan.

This Court sits in diversity. Therefore, this Court will apply the conflict of law rules for the forum state, Michigan. *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003). "Michigan choice of law rules . . . require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Equitable Life Assur. Soc'y of the United States v. Poe*, 143 F.3d 1013, 1016 (6th Cir. 1998). Michigan courts have adopted the approach found in the Second Restatement of Conflict of Laws. *Hardy v. Reynolds & Reynolds Co.*, 311 Fed. App'x. 759, 761–62 (6th Cir. 2009). Section 187 of the Second Restatements directs the Court to generally apply "the law of the state selected by the parties . . . , unless there is no substantial connection between the contract and the state or the parties' choice of law would violate a fundamental policy of the state law which would have governed in the absence of the parties' choice."[1] *Id.* However,

---

[1] WCAA urges the Court to find that Michigan law applies because the insured property is located in Michigan. However, the Court reads section 188 of the Restatements and, therefore section 193, to apply only in the absence of a choice of law provision. *See* Restatements (Second) of Conflict of Laws § 188(2) ("In the absence of an effective choice of law by the

5

"[i]t is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions." *Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 345 (2006); *see also In re Dow Corning Corp.*, 419 F.3d 543, 548 (6th Cir. 2005) ("Michigan choice-of-law rules and general equitable choice-of-law policies support enforcing parties' agreed-upon choice-of-law clauses absent any strong public policy concerns to the contrary."). Effectively, the Court must balance the expectations of the parties to the contract and the relevant states' interests. *Mills Pride v. Cont'l Ins. Co.*, 300 F.3d 701, 705 (6th Cir. 2002).

Here, the parties do not have a substantial connection to New York. Defendant Insurers call a variety of east and Midwest states home but not New York. WCAA is a Michigan governmental entity. Hanger II, the insured property at issue, is located in Michigan. Considering these contacts alone, there does not appear to be a substantial connection to New York. However, Defendant Insurers and WCAA are sophisticated entities that entered into a contract stating that New York and not Michigan law would apply. WCAA now would like to rewrite this provision to allow for the application of Michigan law. Public policy in Michigan dictates that, absent

---

parties (see § 187) . . . ."); *Meridian Leasing, Inc. v. Assoc. Aviation Underwriters, Inc.*, 2003 U.S. Dist. LEXIS 26482 (W.D. Mich. Feb. 14, 2003) ("Section 187 of the Second Restatement of Conflict of Laws addresses the validity of contractual choice of law provisions. Because the insurance policy at issue in this case does not contain a choice of law provision, section 187 is not presently applicable.")

a strong policy to the contrary, the intention of the parties as evidenced in their unambiguous choice of law provision would apply. Although the Court acknowledges that Michigan has a full body of law that would apply under these facts, it is reasonable that the parties, when negotiating the contract, agreed that New York law would best provide the parameters of their relationship. The Court is unaware of and WCAA does not provide a public policy reason that would favor Michigan over New York. Michigan has an interest in ensuring that those who insure risks in Michigan uphold their end of the bargain. But the Court is unwilling to find that this interest would not be satisfied by the application of New York law especially considering Michigan's stance that courts should enforce the intent of parties who agree to have a state's law govern their relationship. The Court sees no reason why New York law should not apply.

### B.    Estoppel

WCAA argues that an insurer has a duty to act in good faith toward the insured. It contends that Defendant Insurers' failure to comply with the policy and offer the replacement cost has severely restricted WCAA's ability to comply with the two year rebuild requirement. Specifically, WCAA notes that Defendant Insurers offered the fair market value and not the replacement cost value, which is the smallest valuation available in the policies. Defendant Insurers argue that the policy should be enforced

as written.

WCAA relies on *Zaitchick v. American Motorists Ins. Co.*, 554 F.Supp. 209 (S.D.N.Y. 1982). The Southern District of New York applied equitable principles when concluding that defendant insurance company was estopped from raising plaintiffs' failure to replace a home as a defense. *Id.* at 216–217. The insurance company refused to tender any money that plaintiffs could use to rebuild their property. *Id.* at 217 ("plaintiffs were refused any monies under the insurance contract. Not surprisingly, they were unable to replace their home. This conduct by defendant made it impossible for plaintiffs to fulfill the condition precedent, and therefore, excuses plaintiffs from performance of the replacement condition."); *see also Polluck v. Fire Insurance Exchange*, 167 Mich.App. 415, 421 (1988) (finding that the insurer failed to "deal with plaintiff prior to her contacting an attorney, . . . fail[ed] to appoint an appraiser after . . . requested . . . [,] and . . . forc[ed] plaintiff to bring . . . suit" and frustrated her ability to repair or replace her home.).

Defendant Insurers argue that WCAA is attempting to broaden coverage under the insurance policy. The Court disagrees. WCAA is alleging that Defendant Insurers failure to comply with the policy by providing the 5 million dollar replacement value in a timely fashion prevented WCAA from complying with the two year rebuild requirement in the policy. This is not a situation where the Court would expand

coverage beyond the limits of the policy and force Defendant Insurers to insure a risk on which a premium was not paid. Rather, WCAA is requesting the benefit of receiving what they paid premiums for notwithstanding Defendant Insurers failure to act in good faith when paying the claim.

Defendant Insurers did tender what they believed was the actual cash value of Hanger II to WCAA, which WCAA could have used to begin replacement efforts. WCAA could have then filed suit to recover any remaining money under the policy up to the replacement cost. However, Defendant Insurers tendered the actual cash value with a statement that receipt of the money would be in consideration of all claims between WCAA and Defendant Insurers. If WCAA had deposited the money, Defendant Insurers could have used that action as the basis for an argument that the claim between the parties were settled and, therefore, Defendant Insurers no longer owed WCAA for the replacement cost. Essentially, no payment was made because receipt of the money was conditioned on WCAA relinquishing its claim against Defendant Insurers. Requiring WCAA to finance the replacement of Hanger II would defeat the purpose of having insurance.

Defendants have literally decided that they would not play fair. Now they ask the Court to enforce the policy as written and impose upon WCAA an obligation to finish the two year rebuild of Hanger II. A condition precedent to WCAA rebuilding

9

or replacing Hanger II is that Defendant Insurers play fair and provide WCAA with at least seed money to begin the process. Defendant Insurers instead want to give WCAA this seed money as a bait to settle all its claims and obligations. Equity would necessitate that those who are not willing to play fair should not get the benefit of the two year rebuild requirement. The Court will not allow Defendant Insurers to enforce the two year rebuild requirement under such circumstances.

### IV. CONCLUSION

Accordingly,

IT IS ORDERED that Wayne County Airport Authority's Motion to Estop Defendant Insurers from Applying Two-Year Requirement to Replace Damaged Building [Docket No. 22, filed September 12, 2012] is GRANTED.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: August 14, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 14, 2013, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

10